**ASBEKA INDUSTRIES, Plaintiff,**

v.

**TRAVELERS INDEMNITY COMPANY, Royal Insurance Company of America as successor in interest to Royal Globe Insurance Co., Globe Indemnity Co. as successor in interest to Royal Globe Insurance Company, Federal Insurance Company, North River Insurance Company, and Hartford Accident and Indemnity Company, Defendants.**

No. CV–91–1140.

United States District Court,
E.D. New York.

Aug. 17, 1993.

---

William D. Gallagher, McMahon, Martine & Meritt, New York City, for plaintiff.

David Eames, Bodian & Eames, New York City, for Travelers Indem. Co.

Carl J. Pernicone, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants Royal Ins. and Globe Indem.

Richard B. Sypher, White & Case, New York City, for defendant Federal Ins.

George W. May, Jr., Hogan & Hartson, Washington, DC, and John Wrenn, Brooklyn, NY, for defendant Hartford Accident.

Agnes A. Reiss, McElroy, Deutsch & Mulvaney, Morristown, NJ.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Asbeka Industries ("Asbeka") has commenced two actions challenging the refusal of the defendant insurance companies to defend or to indemnify it in personal injury actions that were commenced by individuals who were exposed to the asbestos contained in plaintiff's products. In the first action, *Asbeka Indus. of New York, Inc. v. Travelers Ins. Co., et al.*, CV–90–2963 (ILG) ("Asbeka I"), Asbeka seeks a declaratory judgment that the defendants are required to defend and, if necessary, indemnify it in those actions. In this second action, *Asbeka Indus. v. Travelers Indem. Co., et al.*, 831 F.Supp. 74 ("*Asbeka II*"), Asbeka seeks damages and injunctive relief against all of the defendants based on state law claims of negligent misrepresentation, common law fraud, intentional misrepresentation, breach of contract, and section 349 of the General Business Law of New York. In addition, plaintiff seeks damages and injunctive relief against defendant Travelers Indemnity Company ("Travelers") under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("Rico").

These two actions have not been consolidated, and this Memorandum and Order only pertains to the following motions filed in Asbeka II: the defendants' joint motion to dismiss the complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and defendant Travelers' motion to dismiss the RICO claims and for Rule 11 sanctions. Since matters outside the pleadings have been presented to the Court, the parties were notified that the motions to dismiss would be converted to motions for summary judgment under Fed. R.Civ.P. 12(b), 56. *See* Transcript of Oral Argument, dated June 26, 1992, at 13. For the following reasons, defendants' joint motion for summary judgment is granted and defendant Travelers' motion for summary judgment and for Rule 11 sanctions as to the RICO claims is granted.

## FACTS

The facts underlying Asbeka I and Asbeka II are nearly identical as the genesis of both actions is the defendants' refusal to defend or to indemnify Asbeka in pending personal injury actions. Unless otherwise noted, the facts relevant to the disposition of the pending motions in Asbeka II are gleaned from the complaint and the parties' submissions in that action.

Plaintiff Asbeka, a New York corporation, fabricates products that are supplied to it by The Johns Manville Company, a company which produces asbestos. Complaint ¶¶ 6–7. Since July of 1981, Asbeka has been named as a defendant in over seventy lawsuits involving personal injury claims arising out of the use of asbestos in its products. *Id.* ¶¶ 8–9. From 1948 through the mid–1980's, Asbeka claims that it purchased general liability insurance policies from the six insurance companies named as defendants in this action (collectively the "defendant insurers"). The complaint in Asbeka II alleges that Asbeka was insured: (1) from 1948 to December 24, 1964 by Travelers (¶ 25);[1] (2) from December 24, 1964 to December 24, 1974, and from December 24, 1975 to September 1, 1981 by Royal Insurance Company of America ("Royal") and Globe Indemnity Co. ("Globe"), as successors in interest to Royal Globe Insurance Company (¶¶ 31–33, 39–41); (3) from December 24, 1974 to December 24, 1975 by Hartford Accident and Indemnity Company ("Hartford") (¶ 59); (4) from September 1, 1981 to September 1, 1983 by Federal Insurance Company ("Federal") (¶ 46); and (5) from September 1, 1983 to September 1, 1986 by North River Insurance Company ("North River") (¶ 53).

In a letter dated May 6, 1988, Asbeka's counsel notified the defendant insurers that Asbeka had filed a Chapter 11 bankruptcy

---

1. Travelers contends that it only insured Asbeka from 1961 to 1964. *See* Defs.' Joint Mot. to Dismiss at 5 n. 6; Aff. of David Ritter, dated Nov. 27, 1991, at ¶¶ 3, 5 ("Ritter Aff."); and Ex. I to Ritter Aff.

petition on October 9, 1986, and that "Asbeka was a named defendant in approximately seventy (70) asbestos health claim litigation cases ... pending in state and federal courts in the Philadelphia area." When Asbeka demanded that its insurers defend and, if necessary, indemnify it in those pending lawsuits, the insurers declined to do so. Consequently, Asbeka sought to obtain a declaratory judgment to that effect by commencing an adversary proceeding in the bankruptcy court on August 15, 1988. That action was dismissed, however, because the bankruptcy judge determined that the defendants were entitled to a jury trial.

Thereafter, on August 23, 1990, Asbeka commenced the declaratory judgment action in Asbeka I, asking this Court to declare that the defendant insurers were required to defend and, if necessary, indemnify it in pending personal injury actions.[2] While Asbeka I was still pending, Asbeka commenced this action, Asbeka II, on March 28, 1991, seeking injunctive relief and treble damages against Travelers for alleged violations of the RICO statute, 18 U.S.C. § 1962(a) and (c), (Counts I and II); and damages and injunctive relief against all of the defendants based on state law claims of negligent misrepresentation (Count III)[3]; common law fraud (Count IV)[4]; intentional misrepresentation (Count V)[5]; breach of contract (Count VI)[6]; and based on section 349 of the General Business Law of New York (Count VII).

Defendant Travelers moves for summary judgment in Asbeka II on the RICO counts under Fed.R.Civ.P. 56, and for sanctions under Fed.R.Civ.P. 11. All defendants move for summary judgment on the remaining counts in the complaint in Asbeka II.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmovant, however, "must do more than simply show that there

2. Asbeka then filed an Amended Complaint and a Second Amended Complaint in Asbeka I on October 2, 1990, and March 19, 1991, respectively.

3. Asbeka alleges that the defendant insurers, "[p]rior to plaintiff purchasing insurance from [them], ... negligently, carelessly or recklessly represented to plaintiff ... that [they] would handle claims professionally, and would engage counsel to defend such claims and would indemnify ASBEKA for such claims." Complaint ¶¶ 133 (Travelers); 141 (Royal); 149 (Globe); 157 (Federal); 165 (North River); and 173 (Hartford).

4. Asbeka alleges that "[p]rior to its purchasing the insurance policy from [any] defendant [insurer, it] fraudulently, and repeatedly represented through its agents that [it] would professionally process claims and defend and indemnify plaintiff [for] claims [involving] personal injuries." Complaint ¶¶ 179 (Travelers); 187 (Royal); 195 (Globe); 203 (Federal); 211 (North River); and 219 (Hartford). Asbeka further alleges that each defendant "made its representations and omissions with the intent to deceive plaintiff about the nature and amount of the coverage in order to cause plaintiff to purchase [that] defendant's ... insurance policies." *Id.* ¶¶ 181 (Travelers); 189

(Royal); 197 (Globe); 205 (Federal); 213 (North River); and 221 (Hartford).

5. In support of its intentional misrepresentation claim, Asbeka alleges that "Defendant [insurers'] ... agents intentionally [mis]represented to plaintiff ... that defendant [insurers] would handle claims professionally and would engage counsel to defend such claims and would indemnify ASBEKA for such claims ... [and] plaintiff reasonably relied on [those] misrepresentations and omissions ... [to its detriment]." Complaint ¶¶ 232–33 (Travelers); 239–40 (Royal); 246–47 (Globe); 253–54 (Federal); 260–61 (North River); 267–68 (Hartford).

6. Asbeka alleges that the defendant insurers "[have] failed to discharge [their] obligations to defend ASBEKA in the [pending] lawsuits and proceedings, and [have] failed and refused to recognize [their] obligation under the polic[ies], and as a result [have] breached [their] contract[s] with plaintiff" causing Asbeka, *inter alia*, "to expend substantial amounts of money for the defense [of the pending action]" and to pay damages in some of those actions. Complaint ¶¶ 297, 301 (Travelers); 308, 312 (Royal); 319, 323 (Globe); 330, 334 (Federal); 341, 345 (North River); 352, 356 (Hartford).

is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### A. State Law Claims

Plaintiff asserts five state law claims in the complaint: negligent misrepresentation, common law fraud, intentional misrepresentation, breach of contract, and under section 349 of the General Business Law of New York. The defendant insurers move for summary judgment on the state law claims, *inter alia*, as barred by the applicable statute of limitations and by Asbeka's failure to provide timely notice of claim in accordance with the express terms of the defendant insurers' respective insurance policies. This Court will address these contentions in turn.

### 1. Statutes of Limitation

The defendant insurers contend that Asbeka's negligent misrepresentation, intentional misrepresentation and common law fraud claims are time barred under the applicable statutes of limitation. Under New York law, a negligent misrepresentation claim is subject to the six-year limitations period of N.Y.Civ.Prac.L. & R. § 213(1) (McKinney 1990) [hereinafter CPLR § ——]. *See, e.g., Milin Pharmacy, Inc. v. Cash Register Sys., Inc.*, 173 A.D.2d 686, 687, 570 N.Y.S.2d 341, 341–42 (2d Dep't 1991) (applying CPLR § 213(1) and citing cases). *But see Country World, Inc. v. Imperial Frozen Foods Co.*, 186 A.D.2d 781, 782, 589 N.Y.S.2d 81, 82 (2d Dep't 1992) (applying three year limitations period of CPLR § 214(4) and (5)); *see also In re Argo Communications Corp.*, 134 B.R. 776, 794–96 (Bankr.S.D.N.Y.1991)

(noting the inconsistent positions of the New York courts, but holding that where the negligent misrepresentation claim is closely aligned with an intentional misrepresentation claim, then the six-year limitations period of CPLR § 213(8) applies).

Under New York law, a claim for fraud must either be brought within six years from the time that the cause of action accrued or within two years from the date that the plaintiff actually discovered the fraud or could have discovered the fraud with due diligence, whichever is longer. CPLR §§ 203(g), 213(8) (McKinney 1990 & Supp. 1993). *See also Schoen v. Martin*, 187 A.D.2d 253, 254, 589 N.Y.S.2d 443, 444 (1st Dep't 1992); *Arrathoon v. East New York Sav. Bank*, 169 A.D.2d 804, 805, 565 N.Y.S.2d 172, 173 (2d Dep't), *appeal denied*, 77 N.Y.2d 808, 570 N.Y.S.2d 488, 573 N.E.2d 576 (1991). Likewise, the intentional misrepresentation claim is subject to the six-year statute of limitations period applicable to fraud actions under CPLR § 213(8) (McKinney 1990). *See Argo Communications*, 134 B.R. at 795–96 (intentional misrepresentation claim is governed by the statute of limitations applicable to fraud claims under CPLR § 213(8) (dictum)) (citing *Ambassador Ins. Co. v. Euclid Servs., Inc.*, No. 80–Civ.–1235, 1984 WL 341, at *4 (S.D.N.Y. May 24, 1984)).

The defendant insurers urge this Court to conclude that these three claims are time barred because any alleged negligent, intentional or fraudulent misrepresentation must have been made prior to the issuance of the last insurance policy that is relevant to this action, which was issued to Asbeka in September 1983 by defendant North River, *see* Complaint ¶ 53, and which is more than seven-and-one-half years prior to the commencement of this action on March 28, 1991.

This seemingly logical argument, however, suffers from a fatal flaw in that the statute of limitations period does not begin to run until a cause of action accrues. *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993) (citing N.Y.Civ.Prac.L. & R. § 203(a) (McKinney Supp.1993) (statute of limitations begins to run when the cause of

action accrues)). It is also well settled that a cause of action for fraud does not accrue when the fraudulent act is committed, but rather when the plaintiff suffers a loss, *i.e.*, "when a plaintiff with assumed knowledge of the fraudulent wrong may assert a claim for relief." *Cruden v. Bank of New York*, 957 F.2d 961, 974 (2d Cir.1992) (quoting *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978)); *see also Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 19 (2d Cir. 1983); *Sack v. Low*, 478 F.2d 360, 365–66 (2d Cir.1973). *See also Ely–Cruikshank Co.*, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985 (cause of action for breach of contract accrues when "all of the elements necessary to maintain a lawsuit and obtain relief in court" are present) (quotation omitted). Similarly, Asbeka's negligent misrepresentation claim and its intentional misrepresentation claim did not accrue until such time as Asbeka could assert a claim for relief.

▮▮▮▮ Here, Asbeka alleges that the defendant insurers wrongfully disclaimed any duty to defend or indemnify Asbeka under their respective policies after Asbeka's counsel mailed a letter to them in May 1988, apprising them that Asbeka had filed for Chapter 11 bankruptcy and that it had been named as a defendant in over seventy personal injury actions. *See, e.g.*, Ex. L to Aff.

of John Truzzolino, dated November 8, 1991 ("Truzzolino Aff."); Ex. 9 to Decl. of Michael Reilley, dated November 6, 1991 ("Reilley Decl."); Ex. G to Aff. of Roger Prickett, dated November 7, 1991 ("Prickett Aff."); *see also* Ex. 10 to Reilley Decl. (Letter from Defendant Hartford to Eugene Skir, Asbeka's counsel, dated July 15, 1988, notifying Asbeka that it has no record of receiving notice of the seventy pending lawsuits). Thus, May 1988 marks the earliest accrual date of Asbeka's negligent misrepresentation, intentional misrepresentation and common law fraud claims because only then could Asbeka commence an action against the defendant insurers to recover for their alleged failure both to process claims professionally and to provide a defense to Asbeka in pending actions.[7] Accordingly, because Asbeka commenced this action in March of 1991 and the alleged wrongful disclaimers of the defendant insurers occurred after May 8, 1988, these three claims were timely interposed within six years of accrual.[8]

### 2. Notice of Claim and Notice of Lawsuit

The defendant insurers move for summary judgment on all of the state law claims on the ground that they need not defend nor indemnify Asbeka in the personal injury lawsuits based on Asbeka's failure both to comply

---

7. It is noted that Asbeka's common law fraud claim sounds akin to a claim for fraud in the inducement of a contract because it is alleged that the defendant insurers "inten[ded] to deceive [Asbeka] about the nature and amount of coverage in order to cause [Asbeka] to purchase [their] insurance policies." Complaint ¶¶ 181 (Travelers); 189 (Royal); 197 (Globe); 205 (Federal); 213 (North River); 221 (Hartford). Under New York law, a cause of action for fraud in the inducement of a contract, like a breach of contract claim, generally accrues upon execution of the contract, in this case, the insurance policies. *Ply\*Gem of Laurel, Inc. v. Lee*, 91 A.D.2d 513, 456 N.Y.S.2d 382, 383 (1st Dep't 1982). However, where, as here, a plaintiff sustains the injury at a later date, then the cause of action is said to accrue at that later time. *See, e.g., Brooklyn Union Gas Co. v. Interboro Surface Co.*, 87 A.D.2d 833, 833, 449 N.Y.S.2d 274, 275 (2d Dep't 1982) (cause of action for breach of contract accrued when plaintiff was informed by insurance company that it was not named in an insurance policy because plaintiff was forced "to incur legal expenses to defend itself" at that time).

8. It appears that Asbeka had already discovered in 1987 that defendant Travelers, and perhaps some of the other defendants, refused to pay any part of the legal fees incurred by Asbeka's counsel in defending at least twenty-nine personal injury actions. *See* Exs. M and O to Ritter Aff. (letters from Sweeney, Sheehan & Spencer, dated October 8 and November 25, 1987, noting that Joseph Shelley was upset that Asbeka's insurers were not paying the attorney's fees incurred by Asbeka in defending the various personal injury actions); *see also* Shelley Aff. in Opp'n at ¶¶ 22–23 ("none of the [insurance] Carriers had ever conclusively said [that] it would not defend and indemnify Asbeka [before October 1986]"). However, even if Asbeka's state law claims accrued in 1987, they were still timely interposed within the applicable six year statute of limitations periods. It is further noted that Asbeka need not rely on the discovery rule of CPLR·§ 203(g) (McKinney Supp.1993) (formerly CPLR § 203(f)), which allows a plaintiff to interpose a fraud claim within two years of its actual or imputed discovery of the fraud.

with the mandatory notice of claim and notice of suit provisions of their insurance policies. *See, e.g., Security Mut. Ins. Co. of New York v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76, 78 (1972) ("[a]bsent a valid excuse, [the insured's] failure to satisfy the notice [of claim] requirement vitiates the policy."); *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271, 273 (2d Cir.1987); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir.1984); *Eveready Ins. Co. v. Levine*, 145 A.D.2d 526, 528, 536 N.Y.S.2d 87, 88 (2d Dep't 1988). *Cf.* N.Y.Ins.Law § 3420(a)(4) (McKinney 1985) (current statute regarding notice of claim requirements). The parties do not dispute that New York law governs this diversity action. *See, e.g., Olin Corp. v. Insurance Co. of North Am.*, 743 F.Supp. 1044, 1048–49 (S.D.N.Y.1990) (identifying six criteria useful in determining whether New York law applies to insurance policies at issue in a diversity action: "the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business."), *aff'd*, 929 F.2d 62 (2d Cir.1991); *see also* Truzzolino Aff. at ¶¶ 8–10 (insurance policies issued by defendants Royal and Globe were negotiated and underwritten in New York; both of those insurers as well as Asbeka were located in New York when those policies were issued); *see* Ex. B to Affirmation of Joseph Shelley in Opp'n to Defs.' Joint Mot. to Dismiss, dated April 3, 1992 ("Shelley Aff. in Opp'n") (Asbeka's three insurance brokers were all located in New York). In addition, the parties have never raised a choice of law issue in this action, and all parties have assumed that New York law applies. *See Olin Corp.*, 743 F.Supp. at 1049; [Pl.s'] Mem. of Law in Opp'n at 7, 8–10 (applying New York law regarding late notice); Mem. of Law in Supp. of Defs.' Joint Mot. to Dismiss at 25–32 (applying New York law regarding late notice).

Each of the insurance policies at issue provides, in similar language, that Asbeka is required to notify the insurer in writing "as soon as practicable" of the time, place, and circumstances surrounding any occurrence which is insurable under the policy. This language requires an insured to notify an insurer of an "occurrence"[9] "once the circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim." *Commercial Union*, 822 F.2d at 272 (citing cases). An insurer need not demonstrate prejudice before its obligations under the policy will be discharged based on the untimeliness of an insured's notice of occurrence. *Olin Corp. v. Insurance Co. of North America*, 966 F.2d 718, 722 (2d Cir.1992) (citing *Utica Mut.*, 748 F.2d at 121).

The policies at issue also mandate that if a claim is made or a lawsuit is commenced against Asbeka, it shall "immediately" forward to its insurer a copy of "every demand, notice, summons or other process" relating to a pending claim or lawsuit. Under New York law, an insured's failure to timely forward a copy of a summons and complaint may be excused "if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible." N.Y.Insurance Law § 3420(a)(4) (McKinney 1985) (formerly N.Y.Ins.Law § 167(1)(d), *cited in Romano v. St. Paul Fire and Marine*, 65 A.D.2d 941, 942, 410 N.Y.S.2d 942, 944 (4th Dep't 1978)). The insured's failure to provide timely notice of claim or of suit by forwarding documents is less likely to excuse an insurer's obligations if those documents are served within a reasonable time so as not to prejudice the insurer. *See Romano*, 65 A.D.2d at 942–43, 410 N.Y.S.2d at 944 (insurer not prejudiced by 35–day delay in forwarding of legal documents to insurer where its attorneys had opportunity to engage in settlement discussions); *Lauritano v. American Fidelity Fire Ins. Co.*, 3 A.D.2d 564, 570–71, 162 N.Y.S.2d

---

**9.** The policies generally define "occurrence" as an accident or exposure to harmful conditions which leads to bodily injury or property damage within the policy period. *See* Complaint at ¶¶ 291 (Travelers); 302 (Royal); 313 (Globe); 324 (Federal); 335 (North River); and 346 (Hartford).

553, 559 (1st Dep't 1957) (delayed transmission of claims will generally not prejudice insurer and insurer was not prejudiced by delayed transmission of claims where injured party "offered to waive any defaults, to make [its litigation] file available, and to allow a complete defense on all issues"), *aff'd*, 4 N.Y.2d 1028, 177 N.Y.S.2d 530, 152 N.E.2d 546 (1958); *Wausau Ins. Co. v. Home Indem. Co.*, 151 Misc.2d 302, 304, 573 N.Y.S.2d 247, 249 (Civ.Ct.1991) (insurer may not disclaim based on untimeliness of transmittal of legal documents where notice was given by injured party when reasonably possible; where the insurer received timely notice of the accident and objected to having the matter submitted to arbitration; and where court presumed that insurer received summons and complaint that was placed in the mail).

■ In this case, it is clear that Asbeka has not complied with the notice provisions of its insurance policies because it did not provide timely notices of claim and timely notices of occurrence to its insurers. Asbeka never transmitted to its insurers copies of all litigation documents which was served upon it with respect to those lawsuits which it claims that the defendant insurers wrongfully declined to defend or indemnify it.[10] In addition, because Asbeka only learned of a particular plaintiff's personal injury claim when it received a summons and complaint, it was under a duty to notify its insurer within a reasonable time of each pending claim arising out of a plaintiff's exposure to asbestos. By failing to forward a copy of the summons and complaint to its insurers, Asbeka simultaneously failed to notify those insurers of the "occurrence" leading to the asbestos-related injury sustained by a particular plaintiff.[11]

■ Asbeka was named as a defendant in over seventy personal injury actions commenced by individuals who sustained asbes-

10. Shelley states, and North River does not dispute, that he sent a list of fifty pending cases to North River in July 1984. Shelley Aff. in Opp'n at ¶ 107; Prickett Aff. at ¶ 8. Prickett declares that "Asbeka expressly stated that it was not tendering these claims for defense [and that] [n]o previous notice of these claims ... was ever received by North River." Prickett Aff. at ¶ 8. This Court notes that the July 1984 communication is not included as an exhibit to the Prickett Affidavit or the Shelley Affirmation, but Shelley's own letter, dated July 3, 1984, attached as Ex. D to the Prickett Aff., clearly indicates that Asbeka informed North River that it would pay for the defense in the pending lawsuits until its attorney could determine the manifestation dates of the plaintiffs' respective injuries at which time it would be submitted to the appropriate insurer for defense. Furthermore, in a letter dated July 20, 1984, North River specifically requested of Asbeka that "[b]ecause the possibility of exposure to our policy does exist, we ... request [to] be kept advised of developments on all asbestos-related matters as they occur." Ex. E to Prickett Aff. Despite this specific request Asbeka never forwarded to North River copies of the summonses and complaints filed in subsequent lawsuits. Consequently, while North River may arguably have waived its right to disclaim based on Asbeka's failure to provide timely notice of the occurrences leading to the injuries sustained by the plaintiffs in those fifty actions, *see State of New York v. Amro Realty Corp.*, 936 F.2d 1420, 1429–30 (2d Cir.1991), it certainly did not waive its right to disclaim based on Asbeka's repeated failure to forward relevant documents to North River.

11. In *Olin Corp. v. Insurance Co. of North Am.*, 966 F.2d 718 (2d Cir.1992), an insured was sued by many plaintiffs for injuries that were allegedly caused by chemicals escaping from its manufacturing plant. The insurance policy at issue in that case, as in this case, defined "occurrence" to include exposure to conditions which causes injury during the policy period. *Id.* at 722. However, the policy in *Olin Corp.* added the following significant language in defining "occurrence": "All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence." *Id.* Based on this additional language, the court held that the insured was required to notify its insurer of the potential for future claims caused by the chemical leak once it received the first summons and complaint filed in a personal injury action because this "would surely have alerted a reasonable person to suspect that other claims by varied plaintiffs with more attenuated injuries might follow." *Id.* at 724. In this case, only defendants Royal and Globe have submitted a copy of their insurance policy, which does not contain that additional definitional language. *See* Ex. A to Truzzolino Aff. at p. 3 (copy of insurance policy). The record is unclear whether any of the other insurance policies at issue contained this additional language. If they did, then there is even a stronger argument for finding that Asbeka filed a late notice of occurrence when it did not notify each and every one of its insurers of the earlier filed lawsuits.

tos-related injuries, *see* Ex. O to ~~Ritter~~ Aff. (list of sixty-six lawsuits commenced against Asbeka from July 1982 until June 1986); Ex. A to Shelley Aff. in Opp'n (list of forty-one lawsuits commenced against Asbeka from July 1980 until September 1984), yet it concedes that it never notified its insurers directly. This lack of compliance with the notice of suit provision of the policy discharged the obligations of the defendant insurers, who were certainly prejudiced by Asbeka's flagrant disregard of the requirements of the policy and who could not exercise control over those actions from the outset.

■ Asbeka states that it sent copies of the summons and complaint in some of the actions to either its insurance agents, *see* Shelley Aff. in Opp'n at ¶¶ 87–88 ("[Asbeka] gave prompt notice of all of the[ ] [pending] claims [listed in Exhibit A to the Shelley Aff.] to either PAYNE, NATIONAL or CAM [Asbeka's insurance brokers]") and Ex. B to *id.*, or to the law firm of Sweeney, Sheehan & Spencer (formerly McWillaims & Sweeney) (the "Sweeney firm"), which had been hired by Asbeka to represent it in the pending personal injury actions. The record is devoid of any facts indicating that Asbeka's insurance brokers, Malcolm T. Payne Agency, National Coverage, and C.A.M. Associates, were authorized by the defendant insurers to receive notices of claims, notices of pending lawsuits, or copies of summonses and complaints on their behalf. *See, e.g., Acker–Fitzsimons,* 31 N.Y.2d at 442 n. 3, 340 N.Y.S.2d at 907 n. 3, 293 N.E.2d at 79 n. 3 (notice supplied by insured to its insurance broker does not ordinarily constitute notice to the insurance carrier); *Kamyr, Inc. v. St. Paul Surplus Lines Ins. Co.,* 152 A.D.2d 62, 65–66, 547 N.Y.S.2d 964, 966 (3d Dep't 1989); *Todd v. Bankers Life & Cas. Co.,* 135 A.D.2d 1066, 1067–68, 523 N.Y.S.2d 206, 207 (3d Dep't 1987).

■ Asbeka contends that it timely notified the defendant insurers by forwarding copies of summonses and complaints to the Sweeney firm because defendant Royal (and the other defendant insurers, except for defendant Travelers) had hired that firm to represent Asbeka in earlier asbestos-related lawsuits in 1980 and 1983. Shelley Aff. at ¶¶ 6(b), 84–85, 89–91, 103, 176; *see also* Exs. C, E, I to Truzzolino Aff. (Royal refers three actions involving Asbeka to the Sweeney firm in 1980 and 1983). This argument necessarily fails because Asbeka could not conceivably provide timely notice of any pending lawsuits to its insurers by unilaterally hiring the Sweeney firm to represent it in the subsequent personal injury actions. The record reveals that in July 1984, Joseph P. Shelley, Asbeka's President, stated to defendant North River that he had forwarded copies of all pending cases to the Sweeney firm, and that he had "agreed to pay for defen[ding] those actions until such time as medical evidence would establish the manifestation dates of the asbestos-related injuries." Letter of Joseph Shelley to James McMahon, dated July 3, 1984 (Ex. D to Prickett Aff.); *see also* Letter of Joseph Shelley to James McMahon, dated August 29, 1986 ("[Asbeka] had ... engaged Walter Jenkins [of the Sweeney firm] as a private matter to determine [the] dates of [medical] diagnosis on all our cases.... I [Shelley] further recommended to you that it would be in [North River's] best interest to engage Walter Jenkins ... since he is familiar with all of our cases.") (Ex. C to Shelley Aff. in Opp'n); Shelley Aff. in Opp'n at ¶ 122 ("It was for that reason that I continued to engage the SWEENEY firm and in particular [Walter] JENKINS [of that firm] to defend the cases not otherwise defended by the [defendant insurance] Carriers."); *see also* [Supplemental] Decl. of Michael Reilley, dated May 27, 1992 (defendant Hartford never hired the Sweeney firm). Therefore, it is clear that Asbeka, and not the defendant insurers, hired the Sweeney firm to defend it in the later filed, personal injury actions and, accordingly, Asbeka failed to comply with its duty to forward immediately to its insurers all process which it received in pending lawsuits. *See Russo by Russo v. Rochford,* 123 Misc.2d 55, 66, 472 N.Y.S.2d 954, 963 (Supm. Ct.1984) (notice to law office that was not hired by the insurer to defend insured in

negligence action was not proper notice of claim to the insurer).[12]

 In addition, Asbeka argues that it provided timely notice to all of its insurers *as to those few claims* which its insurance agent timely notified the carrier whose policy was currently in force (*i.e.*, Federal or North River) because asbestos-related injuries occur over an extended period and many insurers have provided coverage to Asbeka for different years. Shelley Aff. at ¶ 94 ("PAYNE [the insurance broker] advised me that the current Carrier should be put on notice and normal procedure was that it would notify the prior Carrier."); *id.* at ¶ 24 ("I was in constant contact with representatives of FEDERAL/CHUBB and NORTH RIVER/C & F from 1981 forward.").[13] This argument must be rejected.

In *Autotronics Sys., Inc. v. Aetna Life & Cas.*, 89 A.D.2d 401, 404–05, 456 N.Y.S.2d 504, 506 (3d Dep't 1982), the court held that an insured timely forwarded copies of the summons and complaint to a second insurer within a reasonable time of its receipt of a complaint which evidenced that the claim may have arisen during that insurer's policy period. It was only upon receipt of the complaint that the insured was required to notify its earlier insurer of the underlying suit and to forward a copy of the summons and complaint because only then "did it become readily apparent that defendant [insurer] was on the risk during the period when some or all of the injuries first manifested themselves." *Id.; see also Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42–43 (2d Cir.1991) (distinguishing *Autotronics* on the ground that it deals with late notice of underlying suit).

 This case, however, is clearly distinguishable from *Autotronics* because Asbeka was unsure from the start which insurance carrier would be responsible to defend and, if necessary, indemnify it in any particular personal injury action. *See* Letter of Joseph Shelley to James McMahon, representative of defendant North River, dated *July 3, 1984* (Ex. D to Prickett Aff.) ("Once [manifestation dates are] determined, we will then be able to determine who provides coverage and defense.... From preliminary information, it is my present opinion that this will involve carriers prior to your firm"); *see also* Letter from Joseph Shelley to Donald Barb of Chubb/Federal, dated *February 14, 1986* (Ex. H to Shelley Aff. in Opp'n) (stating that Shelley was criticized by Asbeka's Board of Directors for trying to determine which insurer should provide a defense in the personal injury actions commenced against Asbeka);

---

12. In his affirmation Shelley claims that Asbeka's attorney, Walter Jenkins, sent copies of all complaints in then pending action to defendant North River in October 1986. Shelley Aff. in Opp'n at ¶ 118. There is no other evidence of this claim in the record. In fact, the letters upon which Shelley predicates this claim are attached to his affirmation as exhibits D and E, and simply indicate that Jenkins sent copies of the complaints in two actions, *Barnabei v. ASBEKA* and *Zettle v. ASBEKA*, and not the remaining actions. It is noted that the Zettle action was filed in November 1985, *see* Ex. O to Ritter Aff., and the notice of claim sent to North River in October 1986 was untimely in any event.

13. Asbeka also argues that its insurers were placed on notice of the pending lawsuits through communications among the insurance companies. *See* Shelley Aff. in Opp'n at ¶¶ 159–181. Asbeka offers no authority in support of this argument, which this Court rejects as patently frivolous. The salutary purposes underlying prompt notice of claim are to enable insurers to investigate claims timely before evidence becomes stale, to exercise early control over a claim including assessing settlement potential, and to adjust its insurance reserves to account for the insured's claim. *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Companies*, 748 F.2d 118, 121 (2d Cir.1984). These purposes are not furthered by intercompany communications which, quite clearly, do not provide those insurers whom the insured has not notified directly of the specific facts surrounding the "occurrence" or to whom the insured has not forwarded copies of every demand, summons or complaint which relates to a pending suit. *See Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 797 F.Supp. 176, 184 (E.D.N.Y.1992) (citing *Heydt Contracting Corp. v. American Home Assurance Co.*, 146 A.D.2d 497, 499, 536 N.Y.S.2d 770, 773 (1st Dep't) (fact that insurer obtained independent knowledge of the occurrence does not excuse insured's late notice of claim), *appeal dismissed*, 74 N.Y.2d 651, 542 N.Y.S.2d 520, 540 N.E.2d 715 (1989)); *see also Gardner–Denver Co. v. Dic-Underhill Constr. Co.*, 416 F.Supp. 934, 937 (S.D.N.Y.1976) (holding that insured's late notice to an insurer was not excused by its belief that another insurer would provide coverage).

Shelley Aff. in Opp'n at ¶¶ 6(b), 8, 27, 36, 44, 143, 172 (stating that Asbeka never knew which carrier would be responsible to provide a defense).[14]

■ At that point in time, Asbeka was under a duty to provide notice of occurrence and notice of claim to each of its insurers who might possibly be obligated to provide coverage and to forward a copy of the summons and complaint to each of those insurers. Asbeka clearly failed to do so.

In his lengthy affirmation, Shelley confirms that Asbeka's insurers generally provided coverage and defended Asbeka when they were timely notified of earlier pending lawsuits. See Shelley Aff. in Opp'n at ¶¶ 85, 89, 97, 98, 126, 127 (defendants Royal, Globe, Hartford, North River and Federal provided coverage, defended Asbeka, and agreed to pay for legal fees incurred by Asbeka in those few actions in which Asbeka provided proper notice); see also Truzzolino Aff. at ¶¶ 26–29; Reilley Aff. at ¶¶ 8–14; Prickett Aff. at ¶¶ 3, 4; and Aff. of Donald Barb, dated November 25, 1991, at ¶¶ 4–6. Asbeka predicates its state law claims on the defendant insurers' failure to provide coverage in subsequent lawsuits. The state law claims of negligent misrepresentation, intentional misrepresentation, common law fraud and breach of contract necessarily fail because Asbeka has adduced no evidence that it ever notified its insurers of those additional lawsuits. Based on Asbeka's glaring failure to comply with the express provisions of its insurance policies, this Court is driven to conclude, as a matter of law, that the defendant insurers were not obligated to defend Asbeka in the subsequent lawsuits and, accordingly, they have not acted in any way which would subject them to liability under the state law claims mentioned above.

■ As a final attempt to salvage its state law claims, Asbeka argues that the defendants have waived a late notice defense by failing to issue a timely notice of disclaimer. Shelley Aff. at ¶¶ 96 (Royal and Globe); 104 (Hartford); 123 (North River); 147 (Federal); 157–58 (Travelers).[15] See, e.g., Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028, 1029–30, 416 N.Y.S.2d 539, 540–41, 389 N.E.2d 1061, 1062 (1979) (insurer's unexplained two month delay in disclaiming liability is unreasonable as a matter of law); In re Hartford Accident & Indem. Co., 74 A.D.2d 924, 924, 426 N.Y.S.2d 88, 89 (2d Dep't 1980) (unexplained two month delay precludes effective notice of disclaimer by insurer). Cf. N.Y.Ins.Law § 3420(d) (McKinney 1985) (current statute regarding timely notices of disclaimer). A waiver occurs when an insurer's conduct or statements evidence "a voluntary and intentional relinquishment of a known right" to disclaim coverage on a particular ground. Albert J. Schiff Assocs., Inc., v. Flack, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 974–75, 417 N.E.2d 84, 86–87 (1980).[16]

---

14. Asbeka also repeatedly expressed displeasure that the defendant insurers seemed to follow three separate "trigger dates" at which time their policy coverage would apply. See Shelley Aff. in Opp'n at ¶¶ 82, 83 ("Of the five Defendants in this case, HARTFORD and TRAVELERS espouse an injurious exposure theory; FEDERAL/CHUBB uses a manifestation criterion and ROYAL [and GLOBE] and NORTH RIVER/C & F refer to an occurrence or injury taking place within the policy period as the trigger by which a defense and coverage will be provided."), 101, 94 [sic 101A]. It is noted that under New York law an injury-in-fact trigger applies to asbestos-related injuries, i.e., the defendant insurers' obligations under the policy will only arise if an injury occurred during the policy period regardless of whether or not it was compensable or diagnosable during that time if its existence during the policy period can be proven in retrospect. American Home Products Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760, 764–66 (2d Cir.1984); Abex Corp. v. Maryland Cas. Co., 790 F.2d 119,

124–26 (D.C.Cir.1986) (citing American Home and applying New York law).

15. This Court notes that, like many of the other factual allegations contained in his affirmation, Shelley's claim that the Travelers never notified him that it had not received notice of the pending claims is false. Shelley claims that Travelers never responded to the October 8 and November 25, 1987 letters from Asbeka's counsel. However, those letters are attached as Exhibits M and O to the Ritter Affidavit, respectively, and Travelers' response to the October 8th letter is attached as Ex. N to that affidavit. In its November 19, 1987 letter, Travelers expressly states, "Please be advised that the only claims we have received in regard to [Asbeka] are as follows: [listing three claims]."

16. New York law distinguishes between waiver and estoppel. Schiff Assocs., 51 N.Y.2d at 697, 435 N.Y.S.2d at 974, 417 N.E.2d at 86; State of New York v. Amro Realty Corp., 936 F.2d 1420,

Since Asbeka never provided its insurers with timely and sufficient notice of claim or of the underlying suit, the insurers could not disclaim coverage based on late notice until they learned of the pending lawsuits or received copies of the summonses and complaints filed in those actions. Asbeka concedes that each of its insurers included an affirmative defense of late notice in its Answer filed in 1988, shortly after Asbeka filed its Complaint in the Declaratory Judgment action in the Bankruptcy Court on August 15, 1988. [Pl.s'] Mem. of Law in Opp'n at 11–13. This information was promptly provided to Asbeka after the defendant insurers learned the full extent of the number of lawsuits pending against Asbeka through the Complaint filed in the bankruptcy proceeding. Prior to that time, the insurers had been informally informed in a May 6, 1988 letter from Asbeka's counsel that "approximately seventy (70) asbestos health claim litigation cases [were] pending [against Asbeka] in state and federal courts in the Philadelphia area."

In *State of New York v. Amro Realty Corp.*, 936 F.2d 1420, 1429–30 (2d Cir.1991), the court stated:

> While it may not be possible for an insurer acting in good faith to assert certain defenses to coverage before a complaint is filed—including a late-notice-of-claim defense—we see nothing that would prevent an insurer from waiving certain other defenses—including late-notice-of-occurrence—at a much earlier stage. We see nothing irrational or impossible in the conclusion that an insurer might choose to waive a defense or defenses at any time

after it had knowledge that the defense might be applicable; one can waive a privilege in advance of a need for its exercise.

 In that case, the insurers did not argue that the insureds failed to comply with the notice of claim or suit provisions of the policy because the insureds timely forwarded copies of the summons and complaint to them. *See State of New York v. Amro Realty Corp.*, 697 F.Supp. 99, 103 n. 7 (N.D.N.Y. 1988), *aff'd in part and rev'd in part*, 936 F.2d 1420 (2d Cir.1991). However, the Second Circuit noted in dicta that an insurer might not be required to disclaim based on late notice of claim or suit until after it receives a copy of a summons and a complaint from its insured. *See* 936 F.2d at 1429–30. Accordingly, this Court has no hesitation in concluding that the defendant insurers never waived their right to disclaim coverage based on Asbeka's late notice of suit and that, in fact, they disclaimed timely by including a late notice defense in the answers filed in the bankruptcy proceeding.[17]

### 3. General Business Law § 349 Claim

Asbeka also seeks to recover actual and treble damages against the defendants on the theory that their failure to defend and indemnify it in the pending lawsuits constituted deceptive acts and practices in violation of section 349 of the General Business Law of New York. That section provides:

> [Any] person who has been injured by reason of any violation of this section [*i.e.*, through a deceptive act or practice in the conduct of any business, trade or commerce or in the furnishing of any service in

1430 n. 11 (2d Cir.1991). The latter doctrine provides that an insurer will be equitably estopped from disclaiming coverage in circumstances where, for example, the insurer undertakes to defend an action and then disclaims coverage to the detriment of its insured. *Schiff Assocs.*, 51 N.Y.2d at 699, 435 N.Y.S.2d at 975, 417 N.E.2d at 87. Asbeka has neither raised an estoppel argument in its papers, nor has it demonstrated any facts to support the invocation of equitable estoppel in this action.

**17.** Nor does it appear that the insurers waived their right to disclaim based on Asbeka's failure to provide timely notice of occurrence. The May 6, 1988 letter from Asbeka's counsel did not

provide the defendant insurers with sufficient detail for them to determine whether or not to disclaim coverage. That letter did not state when the actions were commenced. It did not list the names of the plaintiffs, the dates of exposure to asbestos, their respective manifestation dates, or any other pertinent information. The writer simply stated that there were approximately seventy actions pending against Asbeka. However, Asbeka was under a duty to communicate with its insurers within a reasonable time of commencement of each of those lawsuits and cannot now be heard to complain that its insurers declined to respond to the May 6th letter until they filed an answer in the bankruptcy proceeding.

New York] may bring an action in his own name to enjoin such unlawful conduct or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may in its discretion, increase an amount of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y.Gen.Bus.L. § 349(a), (h) (McKinney 1988).

 Defendants argue that the section 349 claim is time-barred because, under New York law, a cause of action for a "liability, penalty or forfeiture created or imposed by a statute," with limited exceptions not applicable here, must be commenced within three years of accrual of the action, citing CPLR § 214(2) (McKinney 1988). At least one court has applied the three year limitations period of CPLR § 214(4), pertaining to "an action to recover damages for injury to property ..." to a claim under section 349. *See Construction Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212, 1223 (S.D.N.Y. 1989). However, this Court need not decide whether a three-year limitations period applies to plaintiff's section 349 claim or whether that claim is otherwise time barred because it is clear that the section 349 claim is meritless. There is nothing deceptive, misleading or unfair about an insurer inquiring about its duty to defend. Thus, even if Asbeka would have standing to maintain a section 349 claim as a corporate consumer of a general liability insurance policy, *see Schroders, Inc. v. Hogan Sys., Inc.*, 137 Misc.2d 738, 742, 522 N.Y.S.2d 404, 406 (Sup.Ct.N.Y.Co. 1987) (corporate consumer has standing to maintain a claim under section 349), the allegations of the complaint do not set forth a cognizable claim. It is well settled that sec-

tion 349 does not apply to "[a] breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, [because that conduct] is not an act or practice affecting the public interest." *Genesco Entertainment, A Div. of Lymutt Indus., Inc. v. Koch*, 593 F.Supp. 743, 751–52 (S.D.N.Y.1984). *See also New England Leather Co. v. Feuer Leather Corp.*, 942 F.2d 253, 257 (4th Cir. 1991) (applying New York statutory law). In this case, the defendant insurers' refusal to defend or to indemnify Asbeka in pending lawsuits is nothing more than a private contractual dispute—and not a recurring deceptive business practice that is harmful to the public at large—and is, therefore, beyond the ambit of section 349. *Holmes Protection of New York, Inc. v. Provident Loan Soc. of New York*, 179 A.D.2d 400, 400, 577 N.Y.S.2d 850, 850 (1st Dep't 1992); *Rubin v. Telemet America, Inc.*, 698 F.Supp. 447, 451 (S.D.N.Y.1988); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 (S.D.N.Y.1988). Based on the evidence of record, this Court is driven to conclude that the insurers were not acting in bad faith or in an outrageous manner in requesting that Asbeka provide them with additional information regarding the respective insurance policies issued by them and concerning the pending lawsuits.[18]

## B. RICO Claims and Rule 11 Sanctions

The RICO statute provides for a private civil cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]...." 18 U.S.C. § 1964(c). Section 1962 contains three substantive subsections. Section 1962(a) prohibits any person from investing income derived from racketeering activity in the establishment or operation of an enterprise engaged in interstate commerce. Section 1962(b) prohibits any person, through a

---

**18.** This case is easily distinguishable from *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52–53 (2d Cir.1992), where the insurer engaged in outrageous conduct in delaying to reimburse its insureds for property losses caused by a fire, *certified question withdrawn as moot*, 984 F.2d 69 (2d Cir.1993), and from *Sulner v. General Accident Fire and Life Assurance Corp.*, 122

Misc.2d 597, 598, 471 N.Y.S.2d 794, 796 (Sup. Ct.N.Y.Co.1984), in which the insurer did not examine property of the insured that was damaged in a flood until six months after the incident, then told the insureds that they could destroy the damaged property and subsequently disclaimed coverage.

pattern of racketeering activity, from acquiring or maintaining an interest in an enterprise engaged in interstate commerce. Section 1962(c) forbids any person to conduct or participate in conducting an enterprise engaged in interstate commerce through a pattern of racketeering activity. To demonstrate that the provisions of section 1962(a)–(c) have been violated, a plaintiff must prove: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

 In the first two counts of the complaint, Asbeka alleges that defendant Travelers, but not the other defendants, has violated two substantive subsections of the RICO statute, *viz.*, 18 U.S.C. § 1962(a) and (c). Because Asbeka cannot show that Travelers committed any predicate acts of mail fraud, *see* 18 U.S.C. §§ 1341, 1961(1) and (5), the RICO claims must be dismissed. It is well settled that to constitute mail fraud the defendant (1) must participate in a scheme to defraud; (2) knowingly use the mails to further that scheme; and (3) must have the specific intent to defraud. *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.), *cert. denied*, 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). In this case, neither the allegations contained in the complaint, nor the statements contained in the Affidavit of Joseph Shelley, dated April 3, 1992 in opposition to Travelers' motion to dismiss the RICO claims, raise any triable issue of fact concerning Travelers' intent to defraud.

Asbeka alleges that Travelers committed mail fraud by mailing three letters via the United States mails which demonstrate a scheme to defraud Asbeka by denying coverage for earlier policy years in order to be absolved of a duty to defend or to indemnify Asbeka in pending lawsuits. Complaint ¶¶ 77, 95, 99, 108, 120; Shelley Aff. in Opp'n to Travelers' Mot. at ¶¶ 13–16; 36–40; Pls.' Mem. of Law in Opp'n to Travelers' Mot. at 7–8, 11. The correspondence upon which Asbeka supports that allegation include (a) a letter dated November 27, 1989, in which Travelers' counsel, Robert Bodian, refused to produce documents unless in the course of discovery in civil litigation, Ex. F to the Complaint; (b) a letter dated September 1, 1983, in which a Travelers' claim account executive, David Ritter, notified Asbeka that he was able to ascertain that Asbeka had been issued a general liability policy from December 24, 1961 to December 24, 1964, Ex. G to the Complaint; and (c) a letter dated March 30, 1984, in which Mr. Ritter acknowledges receipt of a summons and complaint in three pending lawsuits against Asbeka, Ex. H to the Complaint.

 It is inconceivable to this Court how those business letters can serve as predicate acts of mail fraud. The innocuous business communications contained in those letters do not even remotely disclose a "scheme to defraud" Asbeka, nor do they even remotely give rise to a strong inference of intent to defraud. *Beck*, 820 F.2d at 49–51. The cases are legion that a RICO complaint cannot be predicated on innocuous business communications, absent some factual basis for inferring the sender's intent to defraud the recipient via a scheme to defraud. *See, e.g., O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir.1990); *Wiener v. Napoli*, 760 F.Supp. 278, 284–85 (E.D.N.Y.1991) and *Wiener v. Napoli*, 772 F.Supp. 109, 118–19 (E.D.N.Y.1991); *Atlantic Gypsum Co. v. Lloyds Int'l Corp.*, 753 F.Supp. 505, 513 (S.D.N.Y.1990). *See also Miller v. Gould*, No. 89–C–5676, 1992 WL 121612, at *6 (N.D.Ill. May 18, 1992). Accordingly, the RICO claims must be dismissed.[19]

---

19. Plaintiff also annexes to the complaint four business letters which Travelers had written in June and July 1989 to David Fabricators regarding its inability to locate a general liability policy issued to that insured. *See* Exs. A, B, C and D to the Complaint. Plaintiff claims that these busi-

Defendant Travelers also moves for sanctions pursuant to Fed.R.Civ.P. 11 for having to move to dismiss Asbeka's patently frivolous RICO claims. Rule 11 provides, in relevant part, that:

> [e]very pleading ... of a party represented by an attorney shall be signed by at least one attorney of record.... Th[at] signature ... constitutes a certificate by the signer that the signer has read the pleading ...; that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading ... is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

■■■■ The imposition of sanctions under Rule 11 does not depend on a subjective showing of the signer's bad faith. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985). Instead, the court must evaluate the objective reasonableness of the one who signed the pleading. *Derechin v. State University of New York*, 963 F.2d 513, 520 (2d Cir.1992) (citations omitted). Once the court finds a Rule 11 violation, it must impose an appropriate sanction. *O'Malley*, 896 F.2d at 709; *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991); *Eastway Constr.*, 762 F.2d at 254 & n. 7.

In *O'Malley*, a former employee based his RICO claim, *inter alia*, on five racketeering predicates of mail fraud as evidenced by five letters that were mailed by his employer, the municipal transit authority, which denied him medical benefits and terminated his employment. 896 F.2d at 707. The Second Circuit agreed with this Court that the plaintiff's complaint was "baseless." *See id.* at 707. Consequently, the court held that Rule 11 sanctions were mandatory, but that the district court had discretion in fashioning an appropriate sanction. *Id.* at 709–10.[20]

■■■■ To stem the rising tide of RICO suits commenced without thoughtful attention to fundamental principles attendant upon that cause of action, the imposition of

---

ness letters demonstrate a pattern of racketeering activity. *See* Pl.s' Mem. of Law in Opp'n to Travelers' Mot. at 8, 11. That argument is frivolous. First, those four business letters, like the three letters which Travelers mailed to Asbeka and to Asbeka's counsel, are innocuous business communications upon which a RICO claim may not be predicated. Second, as this Court recently noted in *Giuliano v. Everything Yogurt, Inc.*, 819 F.Supp. 240, 243 n. 3 (E.D.N.Y.1993), a plaintiff in a civil RICO action must have suffered injury from at least one predicate act before it can rely on racketeering acts of mail fraud allegedly committed by the defendant against a third party as evidence of a pattern of racketeering activity. Thus, since it is clear that Travelers never committed any acts of mail fraud with respect to Asbeka, Asbeka cannot support its RICO claim by proffering correspondence between Travelers and David Fabricators.

**20.** The court in *O'Malley* also noted that "[t]he need to impose a sanction was enhanced by [plaintiff's] continuing to press his RICO claim after receiving advice to withdraw the suit from [then] Magistrate [Judge] Amon at the pre-trial conference and after being warned by defendants that they would request a rule 11 sanction if he were to pursue the RICO claim." 896 F.2d at 709. Likewise, in this case, Asbeka continued to press its claims in this second suit notwithstanding that defendants' counsel warned Asbeka that they were going to apprise the magistrate judge at a scheduled status conference that Asbeka had commenced a second action that was duplicative of the prior declaratory judgment action. *See* Ex. C to Status Conference Statement in Asbeka I, filed May 6, 1991 (Letter dated May 3, 1991, from Carl Pernicone, Esq., on behalf of all defendants, to William Gallagher, Esq., counsel for Asbeka). In that letter, defendants' counsel also notified Asbeka that should they be forced to move to dismiss the second action, they would move for Rule 11 sanctions. *See id.* While that letter did not address the RICO claims, this Court notes that plaintiff never moved to voluntarily withdraw this action or to withdraw any of the time-barred claims. Rather Asbeka simply did not address defendants' statute of limitations arguments, except as to the common law fraud claim, in its submissions in opposition to defendants' joint motion to dismiss the complaint in Asbeka II.

Rule 11 sanctions may serve the salutary purpose of discouraging such thoughtless litigation and of compensating Travelers for the expense it incurred in responding to it. The realization that not every business letter deposited in a postal box is mail fraud must somehow be forcefully aroused. Since this Court is inclined to award Travelers a portion, if not all, of its reasonable attorney's fees, *see Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), counsel for Travelers shall have twenty days from the date of this Memorandum and Order to file with the Court and to serve on Asbeka contemporaneous time records reflecting the time that it expended in moving to dismiss the RICO counts. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983). Asbeka shall have ten days from service of those time records to file and serve its objections, if any. Thereafter, this Court will fashion an appropriate sanction.

It is noted that neither Travelers nor the other defendants have moved for Rule 11 sanctions pertaining to the state law claims, nor would this Court grant such a request were it to be made. While the majority of the state law claims were time-barred, they could have been pursued had the affirmative defense of the statute of limitations not been raised. There is no evidence that Asbeka interposed this second action, after it had already commenced the declaratory judgment action, "for any improper purpose." *See* Fed.R.Civ.P. 11.

### CONCLUSION

For the foregoing reasons, defendants' joint motion for summary judgment is granted as to the state law claims. The defendants are invited to file an appropriate motion in Asbeka I, the pending declaratory judgment action. In addition, defendant Travelers' motions for summary judgment and for Rule 11 sanctions as to the RICO claims is granted. Counsel for Travelers shall file with the Court and serve on Asbeka, within twenty days of the date of this Memorandum and Order, contemporaneous time records reflecting the time expended in moving to dismiss the RICO claims, and plaintiff Asbeka shall have ten days from the date of service of those time records to file any objections.

SO ORDERED.