KAMYR, INC., et al., Respondents, v ST. PAUL SURPLUS LINES INSURANCE COMPANY et al., Appellants, and ALEXANDER & ALEXANDER, INC., et al., Respondents.

Third Department, November 22, 1989

**APPEARANCES OF COUNSEL**

*Oppenheimer Wolff & Donnelly,* and *Carusone & Muller (John Carusone* of counsel), for appellants.

*Bond, Schoeneck & King (John M. Freyer* of counsel), for St. Paul Surplus Lines Insurance Company and another, respondents.

*Wilson, Elser, Moskowitz, Edelman & Dicker (Steven L. Young* of counsel), for Alexander & Alexander, Inc. and another, respondents.

## OPINION OF THE COURT

MERCURE, J.

Plaintiffs, in the business of supplying specialized equipment to companies in the paper-making industry, contracted in the fall of 1979 with Federal Paper Board, Inc. (hereinafter Federal) to furnish and install certain equipment at Federal's North Carolina paper mill. The equipment was placed in operation in 1981. On June 1, 1984, an explosion took place within a portion of the equipment supplied by plaintiffs, causing extensive property damage to Federal's facility and disrupting paper production. In July 1986, Federal commenced an action against plaintiffs in North Carolina, alleging damages in excess of $10,000,000 as a result of the accident. At the time of the occurrence, defendant St. Paul Guardian Insurance Company (hereinafter Guardian or, collectively with defendant St. Paul Surplus Lines Insurance Company, St. Paul) had in effect an umbrella excess liability policy providing plaintiffs with coverage of $10,000,000 in excess of $500,000 of primary coverage provided by the Mutual Fire Marine and Inland Insurance Company (hereinafter Mutual Fire) and $50,000 and $10,000 in self-insured retentions. Both of these policies were obtained by plaintiffs through defendant Alexander & Alexander, Inc. (hereinafter A & A). Guardian's policy provided that "[i]n the event of an occurrence, which appears likely to involve this Policy, written notice * * * shall be given * * * to the Company * * * as soon as practicable".

Plaintiffs sent four representatives to the Federal facility immediately after the June 1, 1984 explosion and on June 6, 1984 gave notice of the incident to Alexsis, Inc., an affiliate of A & A which provided plaintiffs with claim services. St. Paul was not notified of the incident until March 10, 1986 when a representative of A & A gave notice that the "claim may be extensive enough to involve your Umbrella Excess Layer of $10,000,000". In February 1987, St. Paul advised plaintiffs that it was disclaiming coverage, asserting, *inter alia,* plain-

tiffs' failure to adequately notify it of the June 1, 1984 incident.

In May 1987, plaintiffs commenced this action against St. Paul seeking, *inter alia,* a declaration that St. Paul was obligated to pay any judgment which may be recovered against plaintiffs in the North Carolina action, within the limits of their policy and in excess of the underlying policy. Following considerable discovery, St. Paul moved for leave to file a second amended answer, to allege a new ground for disclaimer, i.e., that plaintiffs' activities came within the category of "design professional errors and omissions" for which there was, St. Paul asserted, no coverage under the policy. Plaintiffs cross-moved for summary judgment against St. Paul. Supreme Court, without explanation, denied the motion and granted the cross motion. This appeal by St. Paul ensued.

We turn first to the cross motion for summary judgment. In the absence of a written memorandum *(see, Dworetsky v Dworetsky,* 152 AD2d 895), we have no way of knowing whether Supreme Court determined that plaintiffs' notice to St. Paul complied with the language of the insurance policy or, rather, that St. Paul's disclaimer was untimely as a matter of law. In any event, the record offers insufficient support for a grant of summary judgment in favor of plaintiffs on either basis. In our view, there are triable issues of fact, including whether A & A was an authorized agent of St. Paul for purposes of receiving notice and whether plaintiffs were actually prejudiced by the timing of St. Paul's disclaimer. Nevertheless, to "[salvage] something of value from an otherwise aborted CPLR 3212 motion" *(E. B. Metal & Rubber Indus. v County of Washington,* 102 AD2d 599, 603), we will exercise our discretion under CPLR 3212 (g) and declare that plaintiffs' March 10, 1986 notice to St. Paul and St. Paul's disclaimer were both untimely.

Initially, we reject plaintiffs' argument that their June 6, 1984 notice to Alexsis constituted notice to an authorized agent of Guardian as a matter of law. Plaintiffs concede that they retained A & A to handle their insurance needs and to act on their behalf in communicating with their insurers. It is well established in this State that an insurance broker is the agent of the insured *(see, Matco Prods. v Boston Old Colony Ins. Co.,* 104 AD2d 793, 796) and "notice to the ordinary insurance broker is not notice to the liability carrier" *(Security Mut. Ins. Co. v Acker-Fitzsimons Corp.,* 31 NY2d 436, 442,

n 3). To establish that A & A was acting as the agent of Guardian, "[t]here must be evidence of some action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred" *(Matco Prods. v Boston Old Colony Ins. Co., supra,* at 796). Here, plaintiffs made such a showing. Nevertheless, we agree with St. Paul that the sworn testimony of representatives of A & A, Alexsis and St. Paul specifically denying that either A & A or Alexsis ever acted as an agent of Guardian is sufficient to raise a triable issue of fact.

▮ Next, in our view, plaintiffs' March 1986 notification was untimely as a matter of law because plaintiffs had no good-faith belief of their nonliability regarding the Federal incident. The contract requires notification "as soon as practicable". Courts have interpreted that language to require that notice be given within a reasonable time under the circumstances *(Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12, 19; *see, Cohoes Rod & Gun Club v Firemen's Ins. Co.,* 134 AD2d 782, 783). This court has recognized that "[a]n insured may explain or excuse his delay [in notifying the insurer] by demonstrating a good-faith belief in nonliability so long as the belief is reasonable under the circumstances" *(Cohoes Rod & Gun Club v Firemen's Ins. Co., supra,* at 783). However, if the insured cannot show a reasonable excuse or mitigating factors "even relatively short periods of delay have been found to be unreasonable as a matter of law" *(Todd v Bankers Life & Cas. Co.,* 135 AD2d 1066, 1067). Here, plaintiffs were aware that the explosion occurred in equipment which they supplied and that Federal's damages exceeded the limits of the Mutual Fire policy within 1 or 2 days following the incident. Significantly, the record is devoid of any new development between the initial visits to the mill in June 1984 and the time of the March 1986 letter which would have heightened plaintiffs' concern that they would be held responsible for Federal's loss *(see, Security Mut. Ins. Co. v Acker-Fitzsimons Corp.,* 31 NY2d 436, 441-442, *supra).* Moreover, plaintiffs' general counsel reported the accident to plaintiffs' auditor in July 1985 under the heading "threatened litigation" with damages totaling $4 to $4.5 million. Under these circumstances, the March 1986 notification was untimely as a matter of law.

▮ We next turn to the issues surrounding St. Paul's disclaimer of coverage. First, we reject St. Paul's contention

that it had no duty to disclaim coverage until the primary coverage had been exhausted. St. Paul's reliance on *Zappone v Home Ins. Co.* (55 NY2d 131) is misplaced. In light of the language of the policy and the circumstances present here, there was a "reasonable possibility that [St. Paul's] excess coverage may be reached" *(Cassara v Nationwide Mut. Ins. Co.,* 144 AD2d 974, 975), triggering St. Paul's duty to disclaim. Second, although the question of whether an insurer's disclaimer was untimely is ordinarily a question of fact *(see, Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028, 1030), St. Paul's 11-month delay in disclaiming coverage because of plaintiffs' alleged untimely notice was unreasonable and therefore was itself untimely as a matter of law *(supra)*. Last, we agree with St. Paul that Insurance Law § 3420 (d) is inapplicable since the underlying claim arises from an accident occurring without the State and involving neither bodily injury nor death. Thus, plaintiffs must establish prejudice in order to estop St. Paul from asserting its coverage defenses *(see, O'Dowd v American Sur. Co.,* 3 NY2d 347, 355), and we agree with St. Paul that a triable issue of fact is presented on this issue, precluding a grant of summary judgment *(supra)*.

■ As a final matter, Supreme Court did not err when it denied St. Paul leave to serve a second amended answer. Although leave to amend should be freely given (CPLR 3025 [b]), such a motion is committed to the discretion of the trial court and the exercise of that discretion will not lightly be set aside *(Beuschel v Malm,* 114 AD2d 569). Here, St. Paul was aware of Federal's negligence claim against plaintiffs for design errors since Federal filed its amended complaint in mid-1986. Thus, the January 1989 motion was not made promptly after awareness of the facts giving rise to the proposed new affirmative defense *(see, Jones v Gelles,* 140 AD2d 819). Moreover, plaintiffs would be seriously prejudiced by the amendment because of the impending trial in the action by Federal *(see, Dougherty v Lupe Constr. Co.,* 98 AD2d 868, 869). Based on these circumstances, we cannot say that Supreme Court abused its discretion in denying the motion.

CASEY, J. P., WEISS, LEVINE and HARVEY, JJ., concur.

Order modified, on the law, with costs to defendants St. Paul Surplus Lines Insurance Company and St. Paul Guardian Insurance Company against plaintiffs, by reversing so much thereof as granted judgment in plaintiffs' favor; partial

summary judgment granted in plaintiffs' favor to the extent of declaring that St. Paul Guardian Insurance Company's disclaimer was untimely as a matter of law, and in St. Paul Guardian Insurance Company's favor to the extent of declaring that plaintiffs' March 1986 notice was untimely as a matter of law; and, as so modified, affirmed.