■ INDIAN COUNTRY, INC., Appellant-Respondent, v PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY, Respondent-Appellant, et al., Defendants. [726 NYS2d 495] —Spain, J. Cross appeals from an order and supplemental order of the Supreme Court (Monserrate, J.), entered March 15, 2000 and April 13, 2000 in Delaware County, which partially granted a motion by defendant Pennsylvania Lumbermens Mutual Insurance Company for summary judgment dismissing the complaint against it.

This action arises out of a claim by plaintiff against its insurance company, defendant Pennsylvania Lumbermens Mutual Insurance Company (hereinafter PLM), and others for a loss resulting from an August 1995 fire to premises located on Borden Street in the Village of Deposit, Delaware County (hereinafter the Borden Street property). Since 1991, PLM has

provided premises insurance for plaintiff, initially through the agency of defendant Edward Jenkins, then employed by defendant A.C. Waddell & Associates, Ltd. (hereinafter Waddell). In April 1993, Jenkins left Waddell and went to work for defendant American Phoenix Corporation, also known as defendant Erickson-Swan-Rowley, Inc. (hereinafter collectively referred to as ESR). As of May 1993, plaintiff had chosen to continue its relationship with Waddell rather than switching to ESR and, through Waddell, renewed its coverage through November 1, 1993, insuring multiple properties categorized in two groups known as locations 1 and 2. The Borden Street property was insured under the location 1 grouping. According to plaintiff, in the fall of 1994, PLM's field representative pressured plaintiff to change its broker from Waddell to ESR/Jenkins, allegedly suggesting that there would be problems with its coverage unless such a change was made. Plaintiff agreed. Significantly, according to an interoffice memorandum written by PLM's president, the field representative had "removed [Waddell] as broker in an effort to save the account for PLM." Thereafter, Jenkins issued plaintiff a binder which increased PLM's blanket coverage for the location 1 properties to $6,500,000 and provided $200,000 of blanket coverage for the properties at location 2. The binder specifically stated that it was effective from November 1, 1994 "until policy received."

PLM's underwriters, however, would not approve the requested $6,500,000 of blanket coverage over the large number of properties listed in location 1. Thereafter, Jenkins worked with plaintiff to break the location 1 properties into two groups—resulting in a total of three insured property groups. The Borden Street property was removed from coverage under location 1 and placed in location 2. Jenkins then issued an amended binder setting forth $6,568,000 of coverage for location 1, $2,500,000 of coverage for location 2 and $216,000 of coverage for location 3, such binder to be effective "until policy received." Plaintiff claims that it never received the amended binder nor assented to the removal of the Borden Street property from location 1.

It is undisputed, however, that on December 16, 1994 PLM delivered a renewal policy to Jenkins, who thereafter reviewed the policy with plaintiff. The new policy clearly reflected the revised premises locations and coverage amounts. Plaintiff contends that it requested that the Borden Street property be moved back into the location 1 category and that Jenkins assured it that its placement in location 2 was just an error and that the property was covered at the higher coverage. Jenkins

denies making such a representation and no such change is mentioned in a December 22, 1994 letter from Jenkins to PLM—copied to plaintiff—requesting other changes, which PLM made by issuing revised declaration sheets.

In July 1995, plaintiff changed its broker from ESR back to Waddell. On August 5, 1995, the Borden Street property was destroyed by fire. PLM paid plaintiff the full $2,500,000 of coverage described in the renewal policy for a location 2 loss. Plaintiff commenced this action seeking damages from, *inter alia*, PLM alleging breach of contract (causes of action 1, 2 and 3) and vicarious liability due to the failure of PLM's agents (allegedly, Waddell, ESR and Jenkins) to provide the insurance coverage requested by plaintiff (causes of action 4, 5 and 8), and seeking punitive damages. On PLM's motion for summary judgment, Supreme Court dismissed plaintiff's contractual causes of action because it found that the limits expressed in the renewal policy had superceded the binder, but denied the motion with respect to plaintiff's agency causes of action. The court also struck plaintiff's demand for punitive damages. Plaintiff appeals and PLM cross-appeals. We now affirm.

It is well settled that an insurance binder serves only as "a temporary or interim policy until a formal policy is issued" (*Springer v Allstate Life Ins. Co.*, 94 NY2d 645, 649) and thus provides temporary insurance which "terminates when a policy is either issued or refused" (*id.*, at 649). Here, there is no dispute that PLM issued a renewal policy and that plaintiff received it. Plaintiff's characterization of the renewal policy, at this juncture, as a "draft" policy is unsupported by language of the policy or any other evidence in this record. Moreover, plaintiff has failed to provide any proof that PLM was ever informed that plaintiff objected to the categorization of the Borden Street property as a location 2 property. Indeed, the letter that Jenkins sent to PLM requesting changes to the policy makes no mention of any changes to the categories reflected in the renewal policy. Accordingly, we conclude that Supreme Court properly dismissed those contractual causes of action based on the superceded binder.

We next turn to PLM's contention that the remaining causes of action against it should also have been dismissed because plaintiff failed to raise a triable issue of fact as to whether Waddell and/or Jenkins/ESR were acting as PLM's agents. Although, typically, an insurance broker is the agent of the insured and not the insurer (*see, Meade v Finger Lakes-Seneca Coop. Ins. Co.*, 184 AD2d 952, 953), a broker will be held to have acted as the insurer's agent where there is some evidence

of action on the insurer's part or facts from which a general authority to represent the insurer may be inferred (*see, U.S. Delivery Sys. v National Union Fire Ins. Co.*, 265 AD2d 402; *Kamyr, Inc. v St. Paul Surplus Lines Ins. Co.*, 152 AD2d 62, 65-66). Because "[t]he agent cannot by his own acts imbue himself with apparent authority" (*Meade v Finger Lakes-Seneca Coop. Ins. Co., supra*, at 953), plaintiff's reliance on the conduct of Jenkins and Waddell, alone, is not sufficient to raise an issue of fact. Plaintiff has, however, presented some proof that Waddell and Jenkins/ESR were acting under PLM's control by asserting that PLM's field representative pressured plaintiff to hire Jenkins/ESR and alleging—based on the memorandum authored by PLM's president—that PLM had the authority to remove Waddell as broker. Accordingly, Supreme Court did not err in concluding that an issue of fact exists precluding summary judgment on the remaining three counts asserted against PLM.

Finally, inasmuch as plaintiff failed to allege facts demonstrating that PLM engaged in "egregious tortious conduct by which [it] was aggrieved [and] that such conduct was part of a pattern of similar conduct directed at the public generally" (*Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 613), we conclude that Supreme Court properly struck that portion of plaintiff's complaint seeking punitive damages.

Cardona, P. J., Crew III, Mugglin and Rose, JJ., concur. Ordered that the order and supplemental order are affirmed, without costs.