■ DIANE CORICA et al., Respondents, v ROCKING HORSE RANCH, INC., Doing Business as ROCKING HORSE RANCH, et al., Appellants. [923 NYS2d 739]—

McCarthy, J. Appeal from an order of the Supreme Court (Zwack, J.), entered August 12, 2010 in Ulster County, which partially denied defendants' motion for summary judgment dismissing the complaint.

Plaintiff Diane Corica (hereinafter plaintiff) and her husband, derivatively, commenced this negligence action seeking damages for injuries she sustained as the result of her falling off a horse at defendants' horseback riding ranch. Plaintiffs' claim arises out of allegations that, among other things, defendants failed to properly instruct plaintiff on how to control a horse, failed to provide her a horse of the proper size and demeanor, and that defendants' trail guides were not sufficiently trained and failed to respond when her horse began bucking. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint based upon the doctrine of assumption of risk. Supreme Court partially granted defendants' motion, but found questions of fact as to whether defendants properly instructed plaintiff as to how to control the horse and whether the trail guides had the opportunity to—but failed to—assist plaintiff once the horse began bucking. Defendants now appeal.

"A participant in a recreational activity such as horseback riding assumes risks which are inherent in and arise out of the nature of the activity and [i]t is well established that an inherent risk in sporting events involving horses is injury due to the sudden and unintended actions of the animals, including those actions which result in the participant being thrown or falling"

(*Dalton v Adirondack Saddle Tours, Inc.*, 40 AD3d 1169, 1171 [2007] [internal quotation marks and citations omitted]). Further, "[a]n assessment of whether a participant assumed a risk depends on the openness and obviousness of the risks, the participant's skill and experience, as well as his or her conduct under the circumstances and the nature of the defendant's conduct" (*Rubenstein v Woodstock Riding Club*, 208 AD2d 1160, 1160 [1994]). Participants will not be deemed to have assumed unreasonably increased risks (*see Morgan v State of New York*, 90 NY2d 471, 486 [1997]; *Huneau v Maple Ski Ridge, Inc.*, 17 AD3d 848, 849 [2005]).

On the day of the accident, plaintiff was placed at the end of a line of eight or nine other riders, with a trail guide positioned directly behind her. Plaintiff claims that, before the line moved, her horse bucked, but she was able to maintain control and remain in the saddle. A few minutes later, while the line had still not moved, her horse bucked again. Plaintiff testified that, although she did not fall, she never regained control of the horse. According to plaintiff, minutes later,* the horse bucked a third time and plaintiff was thrown off.

Plaintiffs raised a triable issue of fact regarding whether the lack of response by the trail guide positioned directly behind plaintiff increased the inherent risk of injury. Daniel Pett, defendants' stable manager, testified that an important aspect of a trail guide's responsibility is to watch out for bucking horses and, in the event that a horse bucks, the trail guides were instructed to control the horse by, among other means, riding alongside and grabbing its reins. Juan Martinez, the trail guide that was positioned directly behind plaintiff that day, testified that he did not have time to react, in that he never observed the horse bucking or plaintiff in any distress and was unaware that she was in any trouble until she fell off the horse. This testimony was contradicted by Pett, however, who, despite being 20 to 25 yards away from plaintiff, testified that he heard plaintiff scream and observed the horse buck two or three times with plaintiff holding onto the horse's neck prior to her falling. Plaintiff also testified that the horse bucked three separate times over the course of several minutes, providing enough time for Martinez to assist her. Martinez testified that had he seen the horse bucking, he could have gone over to the horse within

---

* When first asked at her deposition about the time lapse between the bucks, plaintiff was unsure. She later testified that it was several minutes from when the horse first bucked until she was thrown from the horse. Her affidavit on the motion, stating that minutes passed between the bucks, was therefore not inconsistent with her testimony.

a couple of seconds to try to stop it. Viewing this evidence in a light most favorable to plaintiffs as the nonmovants (*see Hickey v Arnot-Ogden Med. Ctr.*, 79 AD3d 1400, 1401 [2010]), Supreme Court properly determined that plaintiffs raised a triable issue of fact regarding whether Martinez had enough time to bring plaintiff's horse under control and whether his lack of response heightened the inherent risk of plaintiff falling (*see Lipari v Babylon Riding Ctr., Inc.*, 18 AD3d 824, 825-826 [2005]; *Millan v Brown*, 295 AD2d 409, 410 [2002]; *cf. Fintzi v Riverdale Riding Corp.*, 32 AD3d 701, 702 [2006], *lv denied* 8 NY3d 812 [2007]; *Lee v Maloney*, 270 AD2d 689, 691 [2000]).

Plaintiffs also raised a triable issue of fact regarding their claim that defendants enhanced the inherent risk of horseback riding by failing to instruct plaintiff on how to control a horse. She had previously ridden horses on only four occasions over the prior 20 years. Plaintiff was voluntarily participating in an "advanced" trail ride, but she testified that she had never been on a horse that bucked and did not know how to control a horse in such a situation. Although defendants presented plaintiff's "check-in" form indicating that she was an advanced rider, she contends that she did not check that box and that staff members rushed guests through the process of signing forms. Plaintiff did not attend a riding demonstration held daily by defendants, which defendants recommended. She did not ask for any riding instruction prior to or during the ride, but some of defendants' employees testified that a few basic instructions were customarily given to all riders when they mounted their horses, including how to control a horse; plaintiff testified that no one gave her such instructions.

Plaintiff did not ask for any help controlling the horse, despite the fact that there were three trail guides assigned to the ride and, in her opinion, the horse was agitated the entire time she was on it. However, when she mentioned that she felt uncomfortable, an employee reassured her that she looked fine. She also testified that she twice attempted to engage in "small talk" with a trail guide, but he failed to respond or acknowledge her; she did not later attempt to talk to him about her difficulties. Under these circumstances, we conclude that plaintiffs raised a triable issue of fact as to whether defendants' failure to provide her with basic instruction prior to her participating in a ride "constitute[d] a substantial cause of the events which produced the injury" (*Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 659 [1989] [internal quotation marks and citation omitted]; *see Morgan v State of New York*, 90 NY2d at 485).

Peters, J.P., Spain, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, with costs.