Jones v Smoke Tree Farm (2018 NY Slip Op 03299)





Jones v Smoke Tree Farm


2018 NY Slip Op 03299


Decided on May 4, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 4, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., DEJOSEPH, NEMOYER, AND CURRAN, JJ.


1530 CA 17-01222

[*1]DONNA JONES, PLAINTIFF-APPELLANT,
v
SMOKE TREE FARM, A NEW YORK PARTNERSHIP, ROBERT F. SMITH, INDIVIDUALLY AND AS A PARTNER OF SMOKE TREE FARM AND/OR DOING BUSINESS AS SMOKE TREE FARM, BENEDETTE SMITH, INDIVIDUALLY AND AS A PARTNER OF SMOKE TREE FARM AND/OR DOING BUSINESS AS SMOKE TREE FARM, DIANE VAN PATTEN, INDIVIDUALLY AND AS A PARTNER OF SMOKE TREE FARM AND/OR DOING BUSINESS AS SMOKE TREE FARM, AND DON VAN PATTEN, INDIVIDUALLY AND AS PARTNER OF SMOKE TREE FARM AND/OR DOING BUSINESS AS SMOKE TREE FARM, DEFENDANTS-RESPONDENTS. 






MICHAELS & SMOLAK, P.C., AUBURN (MICHAEL G. BERSANI OF COUNSEL), FOR PLAINTIFF-APPELLANT.
COSTELLO, COONEY & FEARON, PLLC, CAMILLUS (ERIN K. SKUCE OF COUNSEL), FOR DEFENDANTS-RESPONDENTS. 


 Appeal from an order of the Supreme Court, Onondaga County (Gregory R. Gilbert, J.), entered May 15, 2017. The order, among other things, granted defendants' cross motion for summary judgment dismissing the amended complaint. 
It is hereby ORDERED that the order so appealed from is modified on the law by denying the cross motion and reinstating the amended complaint, and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced this action seeking damages for injuries that she sustained when she fell from a horse during a riding lesson at defendants' stables. Prior to the lesson, plaintiff signed a release, which provided that the "[u]ndersigned assumes the unavoidable risks inherent in all horse-related activities, including but not limited to bodily injury and physical harm to horse, rider, employee and spectator." Plaintiff moved for, inter alia, partial summary judgment dismissing defendants' affirmative defense of release on the ground that the release signed by plaintiff was void under General Obligations Law § 5-326. Defendants cross moved for summary judgment dismissing the amended complaint. Plaintiff appeals from an order that granted the cross motion and dismissed the amended complaint on the ground of assumption of the risk, and denied the motion as academic.
We agree with plaintiff that Supreme Court erred in granting the cross motion and dismissing the amended complaint, and we therefore modify the order accordingly. "The assumption of risk doctrine applies as a bar to liability where a consenting participant in sporting or recreational activities is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks' " (Rosenblatt v St. George Health & Racquetball Assoc., LLC, 119 AD3d 45, 56 [2d Dept 2014]). " If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them' " (id.). Nevertheless, " [a]wareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff' " (Georgiades v Nassau Equestrian Ctr. at Old Mill, Inc., 134 AD3d 887, 889 [2d Dept 2015]). Ultimately, the doctrine of assumption of the risk "will not serve as a bar to liability if the risk is unassumed, concealed, or unreasonably increased" (Rosenblatt, 119 AD3d at 56). Here, it is undisputed that plaintiff was a beginner and had never [*2]before attempted to mount or ride a horse, and the deposition testimony relied upon by defendants raises questions of fact whether defendants unreasonably increased the risks associated with mounting the horse by failing to give plaintiff adequate instructions and assistance based on her size, athleticism, and obvious struggles in attempting to mount the horse, and whether there were concealed risks of mounting the horse, i.e., whether the horse was "tacked" properly (see Georgiades, 134 AD3d at 889; Vanderbrook v Emerald Springs Ranch, 109 AD3d 1113, 1115 [4th Dept 2013]; Corica v Rocking Horse Ranch, Inc., 84 AD3d 1566, 1567-1568 [3d Dept 2011]). For the same reasons, we reject defendants' contention, as an alternative ground for affirmance, that the written release established as a matter of law that, as per the language of the release, plaintiff expressly assumed "the unavoidable risks inherent in all horse-related activities" (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Contrary to plaintiff's contention, she is not entitled to the dismissal of the affirmative defense of release inasmuch as the release is not void and unenforceable pursuant to General Obligations Law § 5-326. "Where a facility is used for purely instructional purposes,' section 5-326 is inapplicable even if the instruction that is provided relates to an activity that is recreational in nature" (Tiede v Frontier Skydivers, Inc., 105 AD3d 1357, 1358 [4th Dept 2013]). Here, it is undisputed that plaintiff "enrolled in [a] course, paid tuition, not a fee, for lessons and was injured during one of her instructional periods" (Lemoine v Cornell Univ., 2 AD3d 1017, 1019 [3d Dept 2003], lv denied 2 NY3d 701 [2004]), and the record establishes that any recreational use of defendants' facility was "ancillary to its primary educational purpose" (id.; see Millan v Brown, 295 AD2d 409, 411 [2d Dept 2002]; cf. Vanderbrook, 109 AD3d at 1115).
Finally, by failing to raise any issues in her brief with respect to that part of her motion seeking to preclude defendants from mentioning the release at trial, plaintiff has abandoned any such issue on appeal (see Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]).
All concur except NeMoyer, J., who dissents in part and votes to affirm in the following memorandum: I respectfully dissent in part and would affirm [FN1]. The assumption of the risk doctrine is a complete bar to recovery where a participant in a sporting or recreational activity is injured as a result of a risk inherent in that activity (see Turcotte v Fell, 68 NY2d 432, 439 [1986]). "As a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation" (id., citing Maddox v City of New York, 66 NY2d 270, 277-278 [1985]). "It is not necessary to the application of assumption of the risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (Maddox, 66 NY2d at 278 [emphasis added]; see Yargeau v Lasertron, 128 AD3d 1369, 1371 [4th Dept 2015], lv denied 26 NY3d 902 [2015]; Lamey v Foley, 188 AD2d 157, 164 [4th Dept 1993]).
For our purposes, it is well established that the "risk[] of falling from a horse [is] inherent in the sport of horseback riding" (Fenty v Seven Meadows Farms, Inc., 108 AD3d 588, 588 [2d Dept 2013]; see Toro v New York Racing Assn., Inc., 95 AD3d 999, 1001 [2d Dept 2012], lv denied 19 NY3d 810 [2012]). Here, plaintiff did just that: she succumbed to gravity and fell off a horse — the very combination of forces that have plagued riders since men and women first mounted up. Whether mounting, riding, or dismounting, the risk of falling from a horse is always present, and it is necessarily assumed by any rider who chooses to engage in that sport. While plaintiff testified that she was unaware of such risk (despite acknowledging that she was required to wear a helmet), her lack of actual knowledge is immaterial under the circumstances, because falling from a horse is exactly the type of risk that is universally apparent or, at the very least, reasonably foreseeable to any rider, irrespective of skill level or inexperience (see generally Turcotte, 68 NY2d at 439; Yargeau, 128 AD3d at 1371).
Unlike the majority, I categorically reject plaintiff's theory that "saddle slipping" was an unreasonably increased or concealed risk that she did not assume. Saddles, of course, are not [*3]permanently affixed to horses, and it is therefore reasonably foreseeable that a saddle might move or slip. This is so irrespective of any instruction that plaintiff did or did not receive, and irrespective of the adequacy of the tacking. The cases upon which the majority relies for their contrary determination are easily distinguishable (see Georgiades v Nassau Equestrian Ctr. at Old Mill, Inc., 134 AD3d 887, 888 [2d Dept 2015] [instructor insisted that the infant plaintiff perform a maneuver involving her feet being out of the stirrups, despite the infant plaintiff telling the instructor that she felt uncomfortable doing so]; Vanderbrook v Emerald Springs Ranch, 109 AD3d 1113, 1115 [4th Dept 2013] [the defendant ranch outfitted the novice rider plaintiff with bitless bridle which prevented the plaintiff from being able to control the horse]; Corica v Rocking Horse Ranch, Inc., 84 AD3d 1566, 1567 [3d Dept 2011] [the defendant ranch failed to provide even basic instructions to the first-time rider plaintiff, and trail guide failed to intervene, in violation of the ranch's policies, when that plaintiff's horse bucked multiple times before she fell]; Lipari v Babylon Riding Ctr., Inc., 18 AD3d 824, 825 [2d Dept 2005] [the first-time rider plaintiff left unsupervised in violation of the defendant riding center's policies]).
In light of the foregoing, I would affirm Supreme Court's order dismissing the amended complaint on summary judgment.
Entered: May 4, 2018
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: I join the majority in rejecting plaintiff's argument that her signed release is void under General Obligations Law § 5-326.