Stanhope v Burke (2023 NY Slip Op 05427)

Stanhope v Burke

2023 NY Slip Op 05427

Decided on October 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 26, 2023

534055
[*1]Jesse Stanhope, Respondent,
v
Michelle Burke, as Temporary Administrator of the Estate of Alexander Conway, Appellant.

Calendar Date:September 5, 2023

Before:Lynch, J.P., Clark, Aarons, Pritzker and Ceresia, JJ.

Barclay Damon LLP, Rochester (David M. Fulvio of counsel), for appellant.
Scarzafava, Basdekis & Dadey, PLLC, Oneonta (Brenton Dadey of counsel), for respondent.

Clark, J.
Appeal from an order of the Supreme Court (Brian D. Burns, J.), entered May 26, 2021 in Otsego County, which denied defendant's motion for summary judgment dismissing the complaint.
Plaintiff commenced this personal injury action premised on theories of negligence and strict liability seeking to recover for injuries allegedly sustained when he was "bucked" off a horse owned by Alexander Conway (hereinafter decedent) in July 2018. Following joinder of issue and discovery, decedent moved for summary judgment dismissing the complaint contending, among other things, that plaintiff assumed the risks inherit in horseback riding. Plaintiff opposed the motion, which Supreme Court denied, finding outstanding questions of fact regarding, among other things, whether the specific horse posed risks that were above and beyond those known by plaintiff. Decedent appealed and, during the pendency of the appeal, passed away. Defendant — decedent's significant other — was appointed as the temporary administrator of decedent's estate and substituted as defendant in this action.
"When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations. Furthermore, summary judgment can only be granted when the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action" (American Food & Vending Corp. v Amazon.com, Inc., 214 AD3d 1153, 1154-1155 [3d Dept 2023] [internal quotation marks and citations omitted]; see Davis v Zeh, 200 AD3d 1275, 1278 [3d Dept 2021]).
Defendant argues that, because the injury at issue was caused by a horse — a domestic animal — plaintiff may only sue in strict liability (see Agriculture and Markets Law § 108 [7]; Carey v Schwab, 122 AD3d 1142, 1143 [3d Dept 2014], lv dismissed 25 NY3d 1062 [2015]; see also Petrone v Fernandez, 12 NY3d 546, 550 [2009]; Bard v Jahnke, 6 NY3d 592, 596-597 [2006]; Collier v Zambito, 1 NY3d 444, 448 [2004]). However, where a plaintiff suffers injuries stemming from horseback riding, such as here, the plaintiff may bring suit against the owner of the horse under traditional negligence standards (see e.g. Forman v Henkin, 30 NY3d 656, 659 [2018]; Corica v Rocking Horse Ranch, Inc., 84 AD3d 1566, 1566 [3d Dept 2011]; compare Bloomer v Shauger, 94 AD3d 1273, 1274 [3d Dept 2012], affd 21 NY3d 917 [2013]). Regardless, the primary assumption of risk doctrine functions as a "principle of no duty," serving to "den[y] the existence of any underlying cause of action" (Morgan v State of New York, 90 NY2d 471, 485 [1997] [internal quotation marks, emphasis and citation omitted]; accord Grady v Chenango Val. Cent. Sch[*2]. Dist., 40 NY3d 89, 95 [2023]; see Custodi v Town of Amherst, 20 NY3d 83, 88 [2012]).[FN1]
Pursuant to the primary assumption of risk doctrine, "participants in a sporting event or activity[, such as horseback riding,] may be held to have consented to those injury-causing events which are known, apparent or reasonably foreseeable" (Soloman v Taylor, 91 AD3d 1180, 1181 [3d Dept 2012] [internal quotation marks and citation omitted]; see Dalton v Adirondack Saddle Tours, Inc., 40 AD3d 1169, 1171 [3d Dept 2007]). Yet, participants are not deemed to assume the risks of "conditions caused by the defendants' negligence [that] are unique and created a dangerous condition over and above the usual dangers that are inherent in the sport" (Morgan v State of New York, 90 NY2d at 485 [internal quotation marks and citation omitted]; see Custodi v Town of Amherst, 20 NY3d at 88; Bukowski v Clarkson Univ., 19 NY3d 353, 356 [2012]). The applicability of the assumption of risk doctrine generally presents a question of fact that considers "the participant's knowledge of the dangerous condition and consequent risk against the background of his or her skill and experience" (Fritz v Walden Playboys M.C. Inc., 217 AD3d 1293, 1294 [3d Dept 2023] [internal quotation marks and citations omitted]; see Waite v County of Clinton, N.Y., 215 AD3d 1043, 1044-1045 [3d Dept 2023]; Corica v Rocking Horse Ranch, Inc., 84 AD3d at 1567). "However, some risks are so perfectly obvious that even a relatively inexperienced participant should be charged with knowledge of them, simply because they inhere in the sporting activity so far as they are obvious and necessary" (Dalton v Adirondack Saddle Tours, Inc., 40 AD3d at 1171 [internal quotation marks, brackets and citations omitted]). Horseback riding involves inherent risks, including a horse making sudden movements that may cause a rider to be thrown or to fall off the horse (see Quintanilla v Thomas Sch. of Horsemanship, Inc., 129 AD3d 815, 816 [2d Dept 2015]; Soloman v Taylor, 91 AD3d at 1181; Corica v Rocking Horse Ranch, Inc., 84 AD3d at 1566; Dalton v Adirondack Saddle Tours, Inc., 40 AD3d at 1171; Tilson v Russo, 30 AD3d 856, 857 [3d Dept 2006]).
In support of the motion for summary judgment, defendant proffered decedent's affidavit, as well as excerpts of plaintiff's deposition testimony and that of two nonparty witnesses who were decedent's tenants at the time of plaintiff's fall. According to decedent's affidavit, he purchased the horse, Blaze, around April 2018 and learned that the horse was "green broke" — meaning it had experience wearing a saddle and having weight on its back but required further training. In the months that followed, decedent's tenants worked with Blaze; one tenant used various tools to desensitize Blaze to surprising sounds and sights, while the other rode Blaze and monitored decedent's minor children when they rode Blaze. Plaintiff was privy to at least some of this training, and he admitted that, in the months [*3]preceding the incident, he groomed, brushed and walked Blaze three to four times per week. During that time, he never observed Blaze engage in any aggressive behavior. Plaintiff explained that, prior to Blaze, he had ridden various horses approximately 50 or 60 times. On July 2, 2018, plaintiff first rode Blaze, and he did so for approximately 20 minutes without incident. Then, on July 4, 2018, after riding Blaze for about 10 seconds, plaintiff explained that the horse suddenly stopped, causing him to be thrown from the horse and to suffer an injury to his wrist.
The evidence submitted in support of defendant's motion established that plaintiff had significant exposure to horses such that he could appreciate the inherent risks involved in horseback riding. Further, although the parties referred to Blaze as a "green broke" horse who was undergoing further training, there was no evidence that decedent concealed such information from plaintiff, or that decedent otherwise increased or concealed the risks associated with riding Blaze. Indeed, plaintiff admitted that, for months, he had been personally involved in caring for Blaze, and the evidence shows that he was well acquainted with the horse. As such, defendant met the initial burden of establishing that plaintiff assumed the risks involved in horseback riding, negating defendant's liability (see Dalton v Adirondack Saddle Tours, Inc., 40 AD3d at 1171; Tilson v Russo, 30 AD3d at 857; Rubenstein v Woodstock Riding Club, 208 AD2d 1160, 1161 [3d Dept 1994]; compare Sara W. v Rocking Horse Ranch Corp., 169 AD3d 1342, 1344 [3d Dept 2019]; Corica v Rocking Horse Ranch, Inc., 84 AD3d at 1568), and the burden shifted to plaintiff to establish the existence of material questions of fact.
In opposition to the motion, plaintiff proffered his own affidavit as well as further excerpts of the same deposition transcripts submitted by defendant. One of decedent's tenants testified that, on the day in question, he had directed plaintiff to ride in the direction of a pond on the property, but plaintiff instead caused the horse to trot in the opposite direction. Plaintiff admitted that he rode in the direction opposite the pond. Plaintiff argues that he was unaware that Blaze was a "green broke" horse and, as such, he could not have appreciated the risk involved in riding Blaze rather than a more seasoned horse. However, plaintiff's own admissions establish that he was aware of at least some of the training that Blaze was undergoing, and that he was personally involved in grooming and walking the horse in the months preceding the incident. Considering plaintiff's familiarity with Blaze and that a horse suddenly stopping is an inherent risk involved in horseback riding, no material questions of fact remained as to whether decedent had concealed any risks above and beyond those involved in horseback riding. Because plaintiff is deemed to have consented to the inherent risks involved in horseback riding, the primary assumption [*4]of risk doctrine shields defendant from liability, and Supreme Court should have dismissed the complaint (see Quintanilla v Thomas Sch. of Horsemanship, Inc., 129 AD3d at 815-816; Soloman v Taylor, 91 AD3d at 1181; Dalton v Adirondack Saddle Tours, Inc., 40 AD3d at 1171-1172; compare Sara W. v Rocking Horse Ranch Corp., 169 AD3d at 1344; Corica v Rocking Horse Ranch, Inc., 84 AD3d at 1568). The parties' remaining contentions, to the extent not expressly addressed herein, have been considered and found to lack merit.
Lynch, J.P., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, motion granted and complaint dismissed.

Footnotes

Footnote 1: Generally, a plaintiff's assumption of risk or contributory negligence serves to reduce the damages that plaintiff may recover in personal injury actions (see CPLR 1411). However, the Court of Appeals has recently reaffirmed that the primary assumption of risk doctrine "remains in full force in the limited context of athletic and recreative activities," where it continues to operate to bar recovery (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d at 94).