Barese v Erie & Niagara Ins. Assn. (2024 NY Slip Op 01133)

Barese v Erie & Niagara Ins. Assn.

2024 NY Slip Op 01133

Decided on February 29, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 29, 2024

534941
[*1]Juan C. Barese, Appellant,
v
Erie and Niagara Insurance Association et al., Respondents.

Calendar Date:January 10, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, McShan and Powers, JJ.

Roemer Wallens Gold & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for appellant.
Cabaniss Casey LLP, Albany (John B. Casey of counsel), for Erie and Niagara Insurance Association, respondent.
Law Office of Christopher P. Foley, LLC, Katonah (Christopher P. Foley of counsel), for Naccarato Insurance, respondent.

Clark, J.P.
Appeal from an order of the Supreme Court (Christopher E. Cahill, J.), entered October 22, 2021 in Ulster County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.
In 2002, plaintiff loaned funds to his employee and her husband (hereinafter collectively referred to as the mortgagors) to purchase a residence located in the Town of Saugerties, Ulster County (hereinafter the property), and the loan was secured by a mortgage on the property. As of 2013, defendant Naccarato Insurance assisted the mortgagors with obtaining a homeowners' insurance policy with Adirondack Insurance Exchange. Around May 2013, the mortgagors stopped making mortgage payments to plaintiff, and, in August 2013, plaintiff learned that they had also stopped paying their insurance premiums with Adirondack Insurance and that the policy would be cancelled effective September 2013. Plaintiff contacted Naccarato to insure the property, and Naccarato secured insurance for plaintiff through Security Mutual Insurance Company. Plaintiff commenced a foreclosure proceeding against the mortgagors in October 2013. During that time, plaintiff learned that Security Mutual would be cancelling the policy effective November 30, 2013, citing an inspection that revealed a dog on the property and asbestos siding on the dwelling. Assisted by Naccarato, plaintiff applied for a landlord package policy from defendant Erie and Niagara Insurance Association (hereinafter Erie & Niagara) on December 3, 2013. Erie & Niagara issued plaintiff an insurance policy pursuant to that application. Thereafter, the foreclosure action concluded and plaintiff obtained the deed to the property in July 2014; the mortgagors vacated the property around that time. The property remained vacant and, around September 2014, a fire erupted, causing property damage. Plaintiff filed a claim with Erie & Niagara for such damage but, following a lengthy investigation, Erie & Niagara sent plaintiff a notice disclaiming coverage.
In 2016, plaintiff commenced the instant action, alleging that Erie & Niagara breached the insurance contract by denying coverage and that Naccarato had been negligent in filling out the insurance application, causing Erie & Niagara to deny coverage. Following joinder of issue, Erie & Niagara moved for summary judgment dismissing the complaint against it, while Naccarato cross-moved for summary judgment dismissing the complaint against it. Plaintiff opposed Erie & Niagara's motion and Naccarato's cross-motion, and he cross-moved for summary judgment on the issue of liability against both defendants. Supreme Court found that, as a matter of law, plaintiff had made material misrepresentations in the insurance application, allowing Erie & Niagara to rescind the policy; the court granted summary judgment in favor of Erie & Niagara. Supreme Court also found that plaintiff's own malfeasance prevented him from maintaining a negligence claim against Naccarato, and the [*2]court granted summary judgment in its favor. Consequently, the court denied plaintiff's cross-motion for summary judgment and dismissed the entire complaint. Plaintiff appeals.[FN1]
"When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations. Furthermore, summary judgment can only be granted when the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the [nonmoving] party fails to establish the existence of material issues of fact which require a trial of the action" (Stanhope v Burke, 220 AD3d 1122, 1123 [3d Dept 2023] [internal quotation marks and citations omitted]; see Grant v Temple, 216 AD3d 1351, 1352 [3d Dept 2023]). "An insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to making the contract and the misrepresentation was material" (Vestal v Pontillo, 183 AD3d 1146, 1148 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 907 [2021]; see Security Mut. Ins. Co. v Perkins, 86 AD3d 702, 703 [3d Dept 2011]). While materiality is generally a question of fact, an insurer may establish materiality as a matter of law by "present[ing] documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application" (Curanovic v New York Cent. Mut. Fire Ins. Co., 307 AD2d 435, 437 [3d Dept 2003]; see Insurance Law § 3105 [b] [1]; [c]; Ruiz v First Invs. Life Ins. Co., 222 AD3d 683, 684 [2d Dept 2023]; McLaughlin v Nationwide Mut. Fire Ins. Co., 8 AD3d 739, 740 [3d Dept 2004]).
Here, the relevant facts are not in dispute. As of December 3, 2013, the mortgagors owned and occupied the property, while plaintiff was the mortgagee. Plaintiff had commenced a foreclosure action against the mortgagors, which was then pending. After the mortgagors stopped paying insurance premiums on an insurance policy for the property, plaintiff, assisted by Naccarato, obtained a policy from Security Mutual; Security Mutual cancelled that policy effective November 30, 2013. Plaintiff then sought Naccarato's assistance in obtaining insurance for the property, and, on December 3, 2013, plaintiff signed an application for a landlord package policy with Erie & Niagara. As relevant here, this application, which was hand-filled out by Naccarato's vice president, asserted that the property was occupied by tenants, that plaintiff owned the property, that insurance coverage for the property had never been cancelled and that there was no mortgage on the property. Upon conclusion of the foreclosure action, plaintiff was [*3]deeded the property and became the owner in July 2014. After a fire erupted on the property in September 2014, plaintiff filed a claim to recover from the landlord package policy. Then, in December 2015, Erie & Niagara disclaimed coverage.
Additionally, in support of its summary judgment motion, Erie & Niagara submitted documentary evidence including plaintiff's landlord package policy application, the July 2014 deed, the December 2015 disclaiming letter and the deposition transcripts of plaintiff, Naccarato's vice president and Naccarato's CEO, among others. Plaintiff admitted that he signed the insurance application but denied having read it beforehand. Although plaintiff initially asserted that he believed himself to be the owner when he signed the application, he later admitted that he had understood the mortgagors were the owners of the property, subject to the mortgage. Naccarato's vice president admitted that she knew that the mortgagors owned the property, but she filled out the landlord package policy application for plaintiff because he had represented that, due to the filing of a foreclosure, he was, or would soon be, the owner of the property. Similarly, Naccarato's CEO testified that plaintiff led him to believe that the foreclosure proceeding would be completed within a few days and that a new tenant would be moving into the property.
Erie & Niagara also submitted the affidavit of its claim manager, who explained that plaintiff's landlord package policy contained a provision that rendered coverage void if plaintiff engaged in misrepresentations about any material fact concerning the policy or his interest therein; the policy was attached to the claim manager's affidavit. Among other things, the claim manager explained, plaintiff had misrepresented that he was the owner of the property and denied the existence of a mortgage on the property. An underwriting manager with Erie & Niagara explained, through a separate affidavit, that the landlord package policy was only available to owners of rental property, not mortgagees, and she supported that assertion with Erie & Niagara's manual for the landlord package policy program. According to the underwriting manager, but for plaintiff's misrepresentations that he owned the property and that tenants resided therein, Erie & Niagara would not have issued plaintiff the landlord package policy.
Here, the evidence proffered by Erie & Niagara was sufficient to meet its burden on a motion for summary judgment. The documentary evidence and plaintiff's admissions show that the insurance application included various misrepresentations, and the affidavit of the underwriting manager and the landlord package policy program manual establish materiality, as Erie & Niagara would not have issued the policy but for such misrepresentations (see Nabatov v Union Mut. Fire Ins. Co., 203 AD3d 1052, 1054 [2d Dept 2022]; Bleecker St. Health & Beauty Aids, Inc. v Granite State Ins. Co., 38 AD3d 231, 232 [1st Dept 2007[*4]]; McLaughlin v Nationwide Mut. Fire Ins. Co., 8 AD3d at 740-741; compare Curanovic v New York Cent. Mut. Fire Ins. Co., 307 AD2d at 437).[FN2] Further, although an agent's knowledge is ordinarily imputed to its principal, Erie & Niagara's submissions were sufficient to establish that Naccarato abandoned its role as agent and, instead, concealed information to assist plaintiff in obtaining insurance for the property; as such, that information should not be imputed to Erie & Niagara (see e.g. Christopher S. v Douglaston Club, 275 AD2d 768, 770 [2d Dept 2000]). As Erie & Niagara met its initial burden of establishing entitlement to summary judgment, the burden shifted to plaintiff to establish the existence of material questions of fact.
In opposition to Erie & Niagara's motion for summary judgment, plaintiff failed to proffer any evidence that would raise questions of fact, as none of his submissions negate the misrepresentations or cast doubt on their materiality. Rather, plaintiff attempts to apply burdens that are inapposite to the case at hand. For example, plaintiff's assertion that Erie & Niagara was required to prove that the misrepresentations were willful is incorrect, as it has long been established that even an innocent or unintentional misrepresentation in an insurance application, so long as it is material, will suffice to rescind an insurance policy (see Nabatov v Union Mut. Fire Ins. Co., 203 AD3d at 1054-1055; Precision Auto Accessories, Inc. v Utica First Ins. Co., 52 AD3d 1198, 1201 [4th Dept 2008], lv denied 11 NY3d 709 [2008]; Curanovic v New York Cent. Mut. Fire Ins. Co., 307 AD2d at 436-437; see also Insurance Law § 3105 [b] [1]). This is because a misrepresentation made in the context of an insurance application "might lead the insurer to accept a risk it would not have undertaken with full knowledge of the true facts, and the resolution of the rights of the parties in the event of a loss [should] be determined by the materiality of the misrepresentation" (Jonari Mgt. Corp. v St. Paul Fire & Mar. Ins. Co., 58 NY2d 408, 416-417 [1983]; but see Magie v Preferred Mut. Ins. Co., 91 AD3d 1232, 1233-1234 [3d Dept 2012] [requiring willfulness where the misrepresentations pertained to proof of loss]).
We also reject plaintiff's argument that Insurance Law § 3420 (d) should operate to estop Erie & Niagara from disclaiming coverage due to an untimely disclaimer, as that section only applies to claims involving personal injury or death (see J. Lucarelli & Sons, Inc. v Mountain Val. Indem. Co., 64 AD3d 856, 859 [3d Dept 2009]), neither of which is involved herein. Rather, "[u]nder the common-law rule, delay in giving notice of disclaimer of coverage, even if unreasonable, will not estop the insurer to disclaim unless the insured has suffered prejudice from the delay" (Fairmont Funding v Utica Mut. Ins. Co., 264 AD2d 581, 581-582 [1st Dept 1999]), and the plaintiff bears the burden of establishing that prejudice was suffered as a result of [*5]a delayed disclaimer (see Kamyr, Inc. v St. Paul Surplus Lines Ins. Co., 152 AD2d 62, 67 [3d Dept 1989]). Inasmuch as plaintiff's motion papers failed to proffer any such prejudice, there is no basis to determine that Erie & Niagara should be estopped from disclaiming coverage (see Precision Auto Accessories, Inc. v Utica First Ins. Co., 52 AD3d at 1202-1203; Fairmont Funding v Utica Mut. Ins. Co., 264 AD2d at 581-582; see also Miller v Allstate Indem. Co., 132 AD3d 1306, 1308-1309 [4th Dept 2015]; compare Kamyr, Inc. v St. Paul Surplus Lines Ins. Co., 152 AD2d at 67). As plaintiff failed to raise a question of material fact, Supreme Court properly dismissed the complaint against Erie & Niagara.
Turning to Naccarato's cross-motion, the record is clear that, after Naccarato's vice president filled out the insurance application, she gave it to plaintiff to confirm the information and sign it. As the signer of the insurance application, plaintiff was required to confirm the accuracy of the information therein, and he is bound by the representations made therein whether he chose to read the document or not (see Curanovic v New York Cent. Mut. Fire Ins. Co., 307 AD2d at 437).[FN3] The record is devoid of any assertion that plaintiff complained about the misrepresentations or made any attempts to have the information corrected. Ultimately, as plaintiff's own conduct led to the submission of the insurance application containing misrepresentations, he cannot pursue the claim of negligence against Naccarato (see Dunn v Northgate Ford, Inc., 16 AD3d 875, 877 [3d Dept 2005]; cf. Vestal v Pontillo, 158 AD3d 1036, 1041 [3d Dept 2018]). Thus, Supreme Court properly dismissed the complaint in its entirety.
Plaintiff's remaining contentions, to the extent they are properly before us, have been considered and lack merit.
Lynch, Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.

Footnotes

Footnote 1: Plaintiff's failure to raise any argument pertaining to the portion of the order on appeal that granted Erie & Niagara's motion to amend its answer renders any challenge thereto abandoned (see Wiggins v Kopko, 94 AD3d 1268, 1269 n 1 [3d Dept 2012]). In addition, plaintiff's argument that Erie & Niagara's second affirmative defense sounding in misrepresentation was not sufficiently pleaded (see CPLR 3016 [b]), although preserved, is not properly before us as the first time it was raised on appeal was in plaintiff's reply brief (see Matter of Grube v Board of Educ. Spencer-Van Etten Cent. Sch. Dist., 194 AD3d 1222, 1227 [3d Dept 2021]; Matter of Fuller-Astarita v ABA Transp. Holding Co., 176 AD3d 1530, 1531 [3d Dept 2019]). In any event, were we to consider such argument, reviewing Erie & Niagara's amended answer, which superseded its original answer (see Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 155 AD3d 1218, 1219 n 1 [3d Dept 2017], affd 31 NY3d 1090 [2018]), we would find that the defense was pleaded with the requisite particularity (see CPLR 3016 [b]; Craven v Rigas, 85 AD3d 1524, 1526 [3d Dept 2011], lv dismissed 17 NY3d 932 [2011]; compare Maxam v Kucharczyk, 138 AD3d 1268, 1269 [3d Dept 2016]).

Footnote 2: Inasmuch as the standard herein is whether Erie & Niagara would "have issued the same policy if the correct information had been disclosed," plaintiff's attempt to raise questions of fact as to whether Erie & Niagara would have underwritten a different policy is of no consequence (Curanovic v New York Cent. Mut. Fire Ins. Co., 307 AD2d at 437 [emphasis added]; see Insurance Law § 3105 [b] [1]; Ruiz v First Invs. Life Ins. Co., 222 AD3d at 684).

Footnote 3: The insurance application herein included a clause stating that, by signing it, plaintiff "declare[d] that the information provided . . . [was] true, complete and correct," and that it was provided "as an inducement to issue the policy" sought.